REHOBOTH HEIGHTS DEVELOPMENT COMPANY, a corporation of the State of Delaware.

*vs.*

T. CLARENCE MARSHALL.

*Sussex, April 1, 1927.*

*James M. Tunnell*, for complainant.

*Frank M. Jones* and *Joseph L. Cahall*, for defendant.

THE CHANCELLOR. The contract of sale obligates the vendor to convey a good marketable, fee-simple title clear of all incumbrances. The sole objection to performance of the contract made by the defendant vendee is that the title tendered him is not a good marketable one. The record title in the complainant and its predecessors is conceded to be good as far back as July 7, 1887, when one TreDennick purchased a tract including the blocks in controversy at a judicial sale in execution of a judgment upon foreign attachment obtained by him against Curtis, Hughes and Fallon. The land was seized and sold as the property of these defendants. At the time of the foreign attachment proceedings the last recorded deed shows the title to have been in the Rehoboth Association, a corporation created in 1871. It is admitted that this corporation ceased to function about five years after its creation. How the title got from the association into Curtis, Hughes and Fallon, records in the county of Sussex, where the land is located, fail to show.

Because of this break in the record chain of title the defendant refuses to complete his contract of purchase. The complainant contends that it and its predecessors have been in open, continuous, notorious and adverse possession of the land ever since 1887

when TreDennick became the purchaser at the judicial sale referred to, and that this possession coupled with the claim of title evidenced by the recorded conveyances since that date gives such a possessory title as will satisfy all the requirements of marketability which the contract demands. That a title founded on adverse possession for twenty years or more is such a title as equity will compel a purchaser to take who bargains only for a marketable one, has recently been decided by this court. *Brown, et al., v. Davis, ante p 37*, 131 *A*. 142. The rule in such cases is, however, that the title must under the evidence be so free from doubt that, if the case were before a jury, it would be the duty of the judge to give a clear direction in favor of the presumptive grant. *Brown, et al., v. Davis, supra.*

Is, then, the evidence as to adverse possession so free from doubt in this case that if the issue were before a jury, the court would be under a duty to give instructions for the complainant? I think it is. It is admitted by the defendant that for thirteen years at least the notorious, continuous and adverse nature of the possession by the complainant and its predecessors in title is clear. But in my opinion the evidence is clear and positive in showing such possession as far back as 1895 (thirty-two years ago) when Charles W. Cullen purchased the lands at an Orphans' Court sale for the payment of debts conducted by the administrator of TreDennick; and is only a little if any less so for the period running back from 1895 to 1887 when TreDennick became the purchaser. This possession was of the whole tract as subdivided.

Against the force of this evidence the defendant urges that possibly some claimant exists somewhere against whom the possessory title of the complainant would not be good because of the fact that disability of some form would bring such claimant within the saving clause of the applicable statute of limitations so as to permit at this time the successful maintenance of an action to recover the possession. This suggestion is a purely speculative one. There is no evidence of any kind that prompts it. Must the complainant negative the existence of a suggested speculation upon possible facts when there is absolutely no warrant in the evidence upon which to base it? I think not. While some cases are cited to the effect that the complainant is under the burden of negativing

the existence of saving disabilities that prolong the life of a right of action to the time of suit, yet it is conceded by the defendant on his brief that such cases do not express the general rule. But he insists that in bills for specific performance based on adverse possession all such possibilities ought to be negatived by the evidence in order that the title which is sought to be forced on the defendant may be secure from successful attack.

An examination of the cases shows that where the courts have considered this question at length, the defendant's contention in its broad application appears not to have been sustained. The question of whether the conjectural existence of outstanding interests in unknown but possible heirs will cast doubt upon a title, is analogous to such questions as the present case presents, viz., whether the imagined existence of unknown but possible claimants whose rights have been extended by the disability provisions of the statute of limitations will create a similar doubt. What has been said in the cases that deal with the possibility of an outstanding interest in unknown but possible heirs seems therefore to be applicable to the pending question. The Court of Chancery in New Jersey has given consideration to the case of possible heirs in *Day v. Kingsland*, 57 *N. J. Eq.* 134, 41 *A.* 99. In that case the Vice-Chancellor refused to recognize the existence of doubt as to the complainant's title because of a mere possibility that unknown heirs might be in existence who could assert a claim, where such possibility was based on suspicion or conjecture in no wise suggested by the evidence. He observed that in those cases where such possibility was accepted as creating a clouding doubt, the proof was such as to suggest it. But where it was otherwise, he held, and it seems to me rightly, that—

"The mere possibility of the existence of those heirs or persons claiming under them, based on suspicion or conjecture and without the production of any evidence to support the conjecture, is not sufficient to relieve the vendee."

To the same effect is *Greenblatt v. Hermann*, 144 *N. Y.* 13, 38 *N. E.* 966. In that case the court said that—

"A vendee who refuses to take title upon the ground of defect therein, must point out the objection and give proof tending to establish it, or to create such a doubt in respect thereto as to render the title unmarketable. If the defect or doubt is disclosed on the face of the record title, he need go no further,

but if it depends upon some extrinsic fact not disclosed by the record, he must show the fact which justifies his refusal to accept the title tendered.  *  *  * The title is not doubtful by reason of any fact shown or by reason of any inference from any such fact. It is a possibility merely that such heirs may exist. But the plaintiff [the vendee] has not seen fit to give any proof on the subject, and has left it to conjecture merely, and a suspicion or conjecture, without any facts to support it, does not raise a reasonable doubt as to the validity of a title good upon the record."

See, also, *Greffet v. Willman*, 114 *Mo*. 106, 21 *S. W*. 459.

I accept the ruling of these cases as sound and their ruling applies with equal force to the instant case where the suggested doubt as to the title rests not alone upon the mere conjecture, unsupported by even slight testimony, that possible claimants may exist, as was the case in the cited cases from New Jersey and New York, but upon the further conjecture that if such possible claimants do exist some of them may have been persons laboring under a saving disability so as to prolong their right of action to the present, notwithstanding the forty years of adverse occupancy by the complainant and its predecessors. Now where conjecture is thus erected upon conjecture without the slightest thing in the evidence to suggest much less to warrant it, I think there can be no probability of fact upon which to raise enough of a doubt to justify the court in saying that the title is such as not to be marketable.

When we examine the facts, it becomes apparent how extremely remote the possibilities are of any one's ever coming forward who can successfully challenge the complainant's title. Of course if the imaginary claimants were *sui juris*, the twenty year period of limitations has long since barred them. *Revised Code* 1915, § 4663. But the statute saves the rights of those under disability. The sections thereof which do so are as follows:

"4664. SEC. 3. SAVING OF RIGHTS OF SUNDRY PERSONS; LIMITATION TEN YEARS AFTER DISABILITY, REMOVED:—If at any time when such right of entry upon, or action for any lands or tenements shall first accrue, the person entitled to such entry, or action, shall be an infant or a married woman, insane, or imprisoned, such person, or anyone claiming from, by, or under him, may make the entry, or bring the action, at any time within ten years after such disability shall be removed, notwithstanding the twenty years before limited in that behalf shall have expired.

"4665. SEC. 4. SUCCESSORS IN TITLE TO PERSONS UNDER DISABILITY; TO HAVE BENEFIT OF TIME LIMITATION:—If the person entitled to an entry, or

action, die under any of the disabilities aforesaid, any other person claiming from, by, or under him, shall have the same benefit which the person first entitled would have had, by living until the removal of the disability."

There are four classes of disability mentioned in the statute, infancy, coverture, insanity and imprisonment. I suppose our Married Women's Statutes have rendered obsolete the disability of marriage. How dangerous is the possibility that infancy has saved to any imaginary claimant a right, after forty years of adverse possession, to disturb the complainant's title? If the rights of the erstwhile infant were devolved upon him from one who was *sui juris* forty years ago, then the statute immediately began to run, and having begun, its course will not be interrupted because of the arising of a subsequent disability. *De Mill v. Moffat*, 49 *Mich.* 125, 13 *N. W.* 387; *Hogan v. Kurtz*, 94 *U. S.* 773, 24 *L. Ed.* 317; *Tyler v. Tyler, (Ark.)* 2 *S. W.* 466; *Clark v. Richards*, 15 *N. J. Law*, 347. But suppose the adverse possession of the complainant's initial predecessor had its inception at a time when the imaginary claimant was an infant whose right to sue was thus original with him, then how does the matter stand?

In answer it is to be observed, that at the outside, supposing him to be a day old, his right accrued twenty-one years later. If so, he was bound to assert his rights within ten years thereafter and that period would have expired nine years ago. If it be imagined that the supposed infant died leaving an infant heir, would the saving period be extended to him for ten years after his majority? If so, then the succession of disabilities might more than consume the forty-year period of adverse possession. But this possibility is of no moment for the reason that the statute does not allow a succession of disabilities. There is only one period of grace allowed to persons under disability, and that period belongs to the persons entitled when the right of entry upon or action for the land "shall first accrue." As to disabled successors to the disabled first claimant, they are allowed by *Section* 4665 of the *Revised Code* no longer a period of indulgence than the person first entitled would have had if he had lived until his disability was removed. *Demarest v. Wynkoop*, 3 *Johns. Ch. (N. Y.)* 129, 8 *Am. Dec.* 467; *Hogan v. Kurtz, supra.* Thus at the most, under the most extravagant assumption, all possible savings of the right of action because

of the disability of infancy could not extend beyond thirty-one years, a length of time which the adverse possession here shown has outrun by nine years.

I have paid some special attention to this possibility of extension of supposed rights because of the disability of infancy for the reason that it is the one particular aspect of the matter that the solicitors for the defendant have dwelt upon. The other disabilities founded on insanity or imprisonment seem not to have been deemed by them worthy of attention. I dismiss these from consideration not only because they have not been urged, but as well and principally for the reason that they can be founded on nothing more than conjecture without a shred of evidence to support them, and under the general rule hereinbefore referred to are therefore not to be regarded.

Prior to TreDennick, the last-known holder of the possessory and the record title was the old Rehoboth Association which acquired its rights in 1871. Now if that corporation, though it ceased to function as is admitted, nevertheless continued to exist until 1887 as is not impossible, then it was the person in whose favor a right of action against TreDennick's adverse possession first accrued. On this supposition, the statute then began to run and under the principle before stated continued to run not withstanding its title may have subsequently devolved upon persons under a disability. But if it was not the person entitled to the rights on its accrual, then the persons first entitled to sue must have derived title from it prior to TreDennick's possession. Who these persons were, if any, or how they came by their supposedly possible rights, whether by deed from the association or by operation of law upon its possible dissolution, whether such persons were *sui juris*, or infants, or lunatics or convicts, no one knows or has even assumed to hint. Thus the so-called doubt which the defendant fears this title is clouded with appears to rest upon mere speculation, conjecture and imagination. The doubt strikes me as so thoroughly nebulous as to warant its complete rejection.

A decree will be entered as prayed for.