Harold N. Green, Administrator of Stephen P. Carroll, v. Alonzo Levi Loper and Franklin Loper.

(*July* 7, 1949.)

Carey, J., sitting.

*Robert C. Barab* for plaintiff.

*Stewart Lynch* (Florence E. Freeman and Howard E. Lynch, Jr., of counsel) for defendants.

Superior Court for New Castle County, No. 1107, Civil Action, 1948.

CAREY, Judge.

The sole question presented is whether the statute of limitations applicable to a civil action under the Death Act begins to

run on the date of death or on the date of the granting of letters to an administrator, the deceased having left no widow and having brought no action in his lifetime. In *Homiewicz v. Orlowski,* 4 *W. W. Harr.* 66, 143 *A.* 250, this Court held that the general three-year limitation under *Code Section* 5129 is applicable. The defendants maintain that the statute commenced to run on the date of death, since, they say, the cause of action accrued at that time. The plaintiff contends that the cause of action did not accrue until the administrator was appointed, since until then there was no one in existence capable of suing.

The rule advanced by the plaintiff is based upon an interpretation of the words "accruing of the cause of such action" as meaning that no cause of action exists until there are persons in being capable of suing and being sued. *Murray v. East India Co.,* 5 *Barn. & Ald.* 204, 106 *Eng. Reprint* 1167; *Andrews v. Hartford & N. H. R. Co.,* 34 *Conn.* 57; *Riner v. Riner,* 166 *Pa.* 617, 31 *A.* 347, 45 *Am. St. Rep.* 693. Those words have also been construed as signifying the occurrence of all events which determine that the defendant is liable or subject to being sued. *Reading Co. v. Koons,* 271 *U. S.* 58, 46 *S. Ct.* 405, 70 *L. Ed.* 835. Still another interpretation, which perhaps is the same in meaning, is that the "cause of action" has "accrued" when suit could have been brought by the deceased, if living. *Tynan v. Walker,* 35 *Cal.* 634, 95 *Am. Dec.* 152; *Valente v. Boggiano,* 107 *N. J. L.* 456, 154 *A.* 817, 74 *A. L. R.* 834.

At least two Delaware cases lend support to the plaintiff's theory, viz: *Conwell's Administrator v. Morris' Administrator,* 5 *Harr.* 299, and *Spruance v. Darlington,* 7 *Del. Ch.* 111, 30 *A.* 663. Certain statements in *Keller v. President, Directors and Company of Farmers Bank,* 2 *Terry* 471, 24 *A.* 2d 539, may be ignored because the Court there had before it an entirely different problem.

In *Spruance v. Darlington, supra,* decided in 1894, the Chan-

cellor stated that the statute does not being to run until there are parties capable of suing and being sued. However, the real significance of his holding seems to be that no cause of action exists for the recovery of money paid out pursuant to a first will until the discovery of a second will. Dolbow had died in 1881. A will was found and probated and the estate settled according to its terms, part of the estate going to his widow-executrix. Some time after the death of his widow in 1888, a later will of Dolbow was discovered containing a different testamentary scheme. New letters were promptly granted upon this second will and in less than three years thereafter the administrator c. t. a. sued the executor of Dolbow's widow and sundry others to recover what they had wrongfully received under the first will. It was held that the action was not barred by the statute. The facts of that case, the nature of the question presented, and the fact that the suit was in equity make the decision of doubtful value as a precedent for the proposition advanced here.

The case of *Conwell's Administrator v. Morris' Administrator, supra,* decided about 1850 by the Superior Court, deals briefly with the present question. One Heavilo left by his will $300 to Morris for life, then to Conwell. The money was paid to Morris. Conwell died before Morris, but letters on his estate were not granted until two years after Morris' death. More than three years after Morris' death but less than three years after the appointment of Conwell's administrator, suit was brought against Morris' administrator to recover the money. Relying solely on the English authorities, the Court held that the action did not accrue until the appointment of Conwell's administrator. This holding undobtedly supports the plaintiff's position here.

The point has apparently never been considered by the Supreme Court of this State. *Lieberman v. First National Bank, 2 Penn. 316, 45 A. 901, 48 L. R. A. 514, 82 Am. St. Rep. 414,*

involved the fraudulent concealment of facts constituting the basis of an action and is therefore not pertinent to the present discussion. *Lewis v. Pawnee Bill's Wild West Co.,* 6 *Penn.* 316, 66 *A.* 471, 473, 16 *Ann. Cas.* 903, does contain certain expressions which have some significance here. In its opinion, the Supreme Court said:

"It is clearly within the power of the Legislature to fix the period within which actions shall be brought, without any exceptions whatever. Whether there are exceptions in favor of certain classes of persons, or against certain other classes, depends wholly on the will of the Legislature as expressed in the statute itself, or in some other statute of which it is a part. * * *

" 'The courts cannot create exceptions in favor of any class of persons, or cases, or in favor of particular cases, when the statute itself makes none, and no hardship which might result from an adherence to this rule can justify a court in departing from it and reading into the statute some qualification which the Legislature did not provide.' * * *

"Where the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of the court to do so."

It has been recently pointed out by this Court that the death of a debtor does not toll the statute, *Brockson v. Richardson Bros.,* 2 *Terry* 465, 24 *A.* 2d 537; and I take it to be universal law, in the absence of statute, that death of a creditor likewise does not toll the limitation, where the cause of action originally accrued during his lifetime. 21 *Am. Jur.* 877. Moreover, the tacking of successive disabilities is not permitted. *Rehoboth Heights Development Co. v. Marshall.* 15 *Del. Ch.* 314, 137 *A.* 83. These various holdings, I admit, are not diametrically opposed to that of the Conwell case, but they do demonstrate, in my opinion, a different attitude toward the statute than is apparent in the earlier case.

An examination of the American authorities indicates that probably the greater number of Courts in this Country have followed the example set by the so-called leading case of *Murray v. East India Co., supra*. See annotation in 74 *A. L. R.* 837. Some of our Courts have strongly criticized the rule, although they have felt bound by local precedent to follow it. *Riner v. Riner, supra*; *Griesel v. Jones*, 123 *Mo. App.* 45, 99 *S. W.* 769. On the contrary, there are respectable authorities which have declined to follow the English precedent. *Tynan v. Walker, supra; Valente v. Boggiano, supra*; *Carden v. Louisville & N. R. Co.*, 39 *S. W.* 1027, 19 *Ky. Law Rep.* 132; *Dodson v. Continental Can Co.*, 159 *Wash.* 589, 294 *P.* 265. I refrain from citing those cases dealing with Death Acts containing within themselves limitation periods, which are usually held to constitute a condition imposed on the very right to maintain the action. 16 *Am. Jur.* 110.

The question here presented merits reconsideration. Certainly no statute of limitation is designed to benefit creditors or parties plaintiff. Such legislation cuts off or limits their rights of action, and prevents them from raising stale demands against persons who ought to have the right at some time to consider a matter ended. Its real practical effect in any specific case is to protect the alleged debtor or party defendant. It seems obvious that he should not be deprived of this protection by anything the plaintiff has done or failed to do, or by any unusual situation or condition affecting the plaintiff alone, except as the statute itself provides. This is merely another way of saying that the Court should not add exceptions to those provided by the Legislature.

It is argued that the Legislature has provided an exception in this type of case by the use of the word "accrue." It is urged that that word necessarily implies the existence of persons in being capable of suing and being sued and that this prerequisite is not met until an administrator is appointed. This argument may

be answered by the very fact that the Act expressly exempts infants and incompetents. They are incapable of suing, and under the suggested definition, no further words would have been°necessary to save them from the operation of the statute. The fact that the Legislature deemed it necessary to make an express exception for those classes of persons suggests that no other class was intended to be exempt. Actually, the true effect of the plaintiff's definition is to add an exception which the Legislature has not seen fit to insert.

The doctrine of expressio unius est exclusio alterius is clearly against the plaintiff. The objects of the statute and the purposes to be accomplished by it suggest no reason for the adoption of plaintiff's interpretation. What canon of statutory construction does justify his contention? The only rule, which occurs to me as possibly giving comfort to him, is the principle that, where a state adopts or borrows an act from another sovereignty, interpretations of that act by the Courts of the original state will generally be followed by those of the borrowing state. Our statute is based upon and follows generally, but not exactly, the act of 21 *James I, Ch.* 16, which was construed in certain English cases in the way which plaintiff now urges upon this Court. *Murray v. East India Co., supra; Cary v. Stephenson,* 2 *Salk,* 421, 91 *Eng. Reprint* 366. In this connection, however, we must not overlook the important fact that Courts formerly looked upon this type of legislation with great disfavor and were inclined to restrict its operation whenever possible. Many years ago this judicial attitude underwent a change and today such legislation is considered wise and beneficent in purpose, vital to the welfare of society. 34 *Am. Jur.* 24. As early as 1817, Chancellor Kent said: "The doctrine of any inherent equity creating an exception as to any disability, where the statute of limitations creates none, has been long, and, I believe, uniformly exploded. General words in the statute must receive a general construction; and if there be no express exception,

the Court can create none." *Demarest v. Wynkoop, 3 Johns Ch.* 129. 8 *Am. Dec.* 467 (cited with approval in *Rehoboth Heights Development Co. v. Marshall, supra.* See also *Tynan v. Walker* (1868), *Supra.*

Another answer to the plaintiff's contention is to be found in an examination of the practical consequences of the two possible meanings of the statute. In this State, no statute limits the time within which letters may be granted upon a deceased person's estate. It may be done five, ten or twenty years after the death. May we reasonably assume that it was the Legislature's intent that those who are interested in an estate may, by their failure to apply for letters, keep alive a claim of the present type for any such great length of time? How could an alleged tort-feasor protect himself against such a contingency? Is it reasonable to suppose that the legislature intended to throw upon him the burden of applying for letters in order to set the statute in motion? It is far more reasonable to presume an intent to impose the penalty of delay, not upon the alleged tort-feasor, but upon those persons, whether they be legatees, next of kin or creditors, who would ultimately benefit from any actual recovery by the personal representative, and who have the unquestioned power to petition the Register for the granting of letters.

As has been frequently said, this Court should not disregard or reverse its own former rulings except upon a clear showing of error and it is for this reason that these remarks have been considerably extended. When a former ruling has been clearly shown to be wrong, however, we have not hesitated to disregard it. See *Lynch v. Hill, 24 Del. Ch.* 86, 6 *A.* 2d 614; *In re Alexander, 3 Terry* 461, 36 *A.* 2d 361; *Biddle v. Board of Trustees, 3 W. W. Harr.* 425, 138 *A.* 631. Moreover, the importance of the present question suggests the probability of a writ of error to the Supreme Court, and the granting of defendant's motion will at least have the practical advantage of paving the way for a final authoritative

determination of the point without the preliminary trouble and expense of a jury trial.

To summarize, I am of the opinion that the word "accrue," tested by almost every pertinent canon of statutory construction, does not presuppose the existence of persons in being capable of suing and being sued; that the true effect of *Conwell's Administrator v. Morris' Administrator* was to add an exception to those provided by the Legislature; and that the rule expressed in that case, and quoted in *Spruance v. Darlington,* not only is out of tune with the trend of modern decisions, but is also in its result inconsistent with the principles announced in the *Pawnee Bill* case. I am further of the opinion that the words in question should be construed in the same manner suggested by the Federal Supreme Court in *Reading Co. v. Koons,* supra, towit, as signifying the occurrence of all events which determine that the defendant is presently liable or subject of being sued. The defendant's motion will be granted, as this suit was commenced more than three years after the cause of action accrued.

An order to this effect may be presented.