OPINION OF THE COURT
Joseph Jiudice, J.
This is a motion by the defendants for summary judgment dismissing the plaintiff’s complaint.
The court is presented with somewhat unique circumstances in this case.
On November 5, 1972, the decedent entered St. Francis Hospital as a patient of the defendant, Starpoli. He was operated upon on November 7, 1972, for the removal of his gallbladder which apparently contained a tumor. The decedent expired on November 12, 1972, and from the hospital record, the cause of death was listed as "cardiac arrest”, "metabolic acidosis”, "respiratory alcolosis”.
The plaintiff, as widow of the decedent, apparently dissatisfied with the alleged cause of death of her husband, engaged the services of a pathologist, the Deputy Chief Medical Examiner of the City of New York, to perform an autopsy upon her husband’s body. The decedent’s body was exhumed and on January 19, 1973, in the presence of plaintiff’s attorney, the autopsy was performed on September 26, 1973, and contained the following:
"PANCREAS:
"There is a severe, acute necrotizing, hemorrhagic pancreatitis which has completely replaced the pancreatic tissue with necrotic material with much fat necrosis and this surrounding tissue is also severely hemorrhagic and surrounds the entire pancreas and involves all the surrounding fat and extends down retroperitoneally and posteriorly to the kidneys and down to the mid-portion of the psoas muscles on each side. This entire area shows complete fat necrosis and acute hemorrhage. All this is due to a 0.6 cm. sized gall stone which lies at the ampulla of Vater and is blocking it. Lying above the stone is a T-tube which extends to the outside of the body and which *623 is patent. This readily explains why there was no blockage of bile and no jaundice because the bile was draining from the T-tube to the outside although the common duct is blocked at the ampulla of Vater by the stone that also blocks the pancreatic duct and there is back up in the pancreatic duct. The gall bladder is absent and there is some granulation tissue in the gallbladder bed but no hemorrhage from the gallbladder site nor is there any hemorrhage from neighboring vessels that can be determined. There are also sutures in the region of the ampulla of Vater that involve the neighboring wall and the duodenum, however, all the tissues are intact and none of them involve the duct system.”
It is the plaintiff’s contention that the autopsy report not only indicated the true cause of death of the decedent, but indicated the affirmative and negligent acts of the defendant. It is her further claim that she first discovered the true cause of death of her husband at the time she received the autopsy report, and that within two years of the date of discovery she made application to be appointed administratrix of his estate. The autopsy report contained findings of the medical examiner, but there were no affirmative statements as to the cause of death different from those contained in the original hospital report. Some 19 months after the autopsy report was received and the claimed discovery made, limited letters of administration were issued to the plaintiff on April 28,1975.
On May 12, 1975, the instant action was commenced.
The plaintiff claims that the autopsy report indicated that the cause of her husband’s death was due to the impaction of the gallstone and the presence of a defective T-tube in his body, and that the gallstone and T-tube are "foreign objects”. The plaintiff is claiming, in effect, that the "foreign object” rule and the "discovery” rule applicable to medical malpractice actions as set forth in CPLR 214-a should apply in the instant case. It is her further claim that CPLR 203 (subd [f]), the discovery statute, is likewise controlling.
The moving defendants dispute the plaintiff’s contentions, as aforesaid; however, the principal thrust of their motion is that this is an action for wrongful death and is time barred under the two-year Statute of Limitations as set forth under EPTL 5-4.1, which reads as follows: "The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or *624 default which caused the decedent’s death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued. Such an action must be commenced within two years after the decedent’s death. When the distributees do not participate in the administration of the decedent’s estate under a will appointing an executor who refuses to bring such action, the distributees are entitled to have an administrator appointed to prosecute the action for their benefit.”
Malpractice is a peculiar form of negligence, mainly however, in the degree of proof necessary to establish it. It is, however, negligence and, if proven, an actionable wrong. Malpractice, therefore, qualifies as a "wrongful act, neglect or default” as set forth in EPTL 5-4.1, and which may form the basis of an action for wrongful death. The plaintiff cannot claim that this is a malpractice action and a wrongful death action in order to take advantage of CPLR 214-a.
Pure and simply, the instant action is one for wrongful death based upon claimed medical malpractice.
The issue, therefore, is whether the statutory provisions relied on by the plaintiff, i.e., CPLR 203 (subd [f]) and CPLR 214-a, are applicable in an action for wrongful death based on allegations of malpractice, or, whether the two-year Statute of Limitations set forth in EPTL 5-4.1 is controlling.
By relying on the foregoing provisions of the CPLR, the plaintiff is, in effect, asking this court to establish a common-law cause of action and to rule that in an unusual case the applicable Statute of Limitations regarding a wrongful death action should be tolled.
The Court of Appeals of this State in Ratka v St. Francis Hosp. (44 NY2d 604) has clearly established that a common-law cause of action for wrongful death does not exist in this State. More recently, the Appellate Division, Second Department, in Grant v Guidotti (66 AD2d 545) in a detailed and comprehensive opinion,explored the wrongful death action under the common law and traced its history with other jurisdictions to its present status in this State as determined in Ratka (supra).
The court therein stated (p 560): "If in 1846, one year before enactment of the wrongful death statute in New York, the highest court of this State had held that there was a common-law wrongful death action, the limitation period in the succeeding year’s statute would still have applied to the benefi *625 ciarles listed in the statute. The 1847 wrongful death statute, righting an ancient wrong, cannot be doubly ignored (as plaintiffs seek), substantively (so as to be drowned in a common-law right), and adjectively (so as to ignore the limitation period therein).”
The conclusion is inescapable that the clearly expressed intention of the Legislature in enacting EPTL 5-4.1 was to provide that an action for wrongful death must be commenced within two years after the date of death, regardless of the underlying negligent act which gave rise to the cause of action. The language leaves no room for judicial construction and there are no statutory spaces to be filled.
Neither CPLR 203 (subd [f]) nor CPLR 214-a is applicable to wrongful death actions, nor can they be utilized to extend or toll the mandatory two-year Statute of Limitations specifically set forth in EPTL 5-4.1.
The cause of action for wrongful death, even though based upon claimed medical malpractice, accrues at the time of death and must be commenced within two years after the date of death notwithstanding the discovery provisions contained in the CPLR.
The plaintiff’s cause of action for wrongful death is barred by the applicable two-year Statute of Limitations, and since this action was not commenced on or before November 12, 1974, the defendants are entitled to summary judgment dismissing the wrongful death cause of action contained in the plaintiff’s amended complaint.
The plaintiff’s amended complaint sets forth a second cause of action for damages based upon loss of consortium. Since this is a derivative cause of action based upon the cause of action for wrongful death, the defendants are entitled to summary judgment dismissing the second cause of action.
There is another procedural issue recognizable on this motion which must be resolved.
The plaintiff’s first cause of action for wrongful death based upon malpractice contains allegations claiming damages for conscious pain and suffering of the decedent. Combining allegations of wrongful death with allegations of conscious pain and suffering is improper pleading.
EPTL 11-3.2 sets forth a separate and distinct cause of action to recover damages for conscious pain and suffering endured by a decedent prior to death. Such a cause of action is *626 separate and distinct from a cause of action for wrongful death and, as such, must be separately pleaded. The cause of action for conscious pain and suffering, being a separate and distinct cause of action, survives notwithstanding this court’s dismissal of the wrongful death cause of action.
Accordingly, the complaint is dismissed, with the right of the plaintiff to serve a further amended complaint separately stating and setting forth a cause of action to recover damages for conscious pain and suffering endured by the decedent. Said further amended complaint shall be served within 20 days after service of a copy of the judgment to be entered herein with notice of entry thereon.