In re Asbestos Litigation, Limited to Concetta DIMEDIO, Administratrix of the Estate of Gabriel DiMedio, Deceased, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, Penn Central Corporation, Allied Corporation, Armstrong World Industries, Carey Canada, Inc., Certainteed Corporation, Eagle Picher Industries, Keene Corporation, Nosroc Corporation, Owens-Illinois, Inc., Raymark Industries, Tannetics, Inc., TNT Liquidating Company, Union Rubber, Inc., and W.R. Grace Co., Defendants,

v.

ANCHOR PACKING COMPANY, Celotex Corporation, successor in interest to Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation, Durox Equipment Corporation, Flintkote Company, Garlock, Inc., John Crane-Houdaille, Inc., Nicolet, Inc., Owens-Corning Fiberglass Corporation, J.W. Roberts, Ltd., Studebaker-Worthington, Inc., Turner & Newall PLC., and Turner Asbestos Fibers Ltd., Third-Party Defendants.

Civ. A. No. 85–580 JJF.
Master File No. Misc. 85–100.

United States District Court,
D. Delaware.

Dec. 15, 1986.

Douglas B. Canfield of Jacobs & Crumplar, P.A., Wilmington, Del., for plaintiff DiMedio.

Somers S. Price, Jr. of Potter, Anderson & Corroon, Wilmington, Del., for Consol. Rail Corp., Penn Cent. Corp. and co-counsel for Armstrong World Industries.

Richard K. Herrmann of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for Allied Corp. and TNT Liquidating.

C. Scott Reese of Cooch and Taylor, Wilmington, Del., for Raymark Industries.

Douglas B. Catts of Schmittinger & Rodriguez, P.A., Dover, Del., co-counsel for Carey Canada and Celotex Corp.

Richard P.S. Hannum of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for W.R. Grace Co.

Howard M. Berg of Howard M. Berg & Associates, Wilmington, Del., for Nicolet, Inc.

Roderick R. McKelvie of Ashby, McKelvie & Geddes, Wilmington, Del., for John Crane-Houdaille, Inc.

Michael B. McCauley of Palmer, Biezup & Henderson, Wilmington, Del., for Anchor Packing Corp.

David L. Baumberger of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for Celotex, Certainteed Corp., Durox Equipment Corp., Eagle-Picher Industries, Flintkote Co., Keene Corp., Nosroc Corp., Owens-Illinois, Inc., Owens-Corning Fiberglass Corp., J.W. Roberts, Ltd., Turner & Newall PLC., Turner Asbestos Fibers Ltd., and co-counsel for Armstrong Industries and Carey Canada, Inc.

James F. Bailey, Jr. of Elzufon & Bailey, P.A., Wilmington, Del., for Studebaker-Worthington, Inc.

Michael J. Goodrick of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., for Union Rubber, Inc.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Defendant Owens-Illinois, Inc., has moved for judgment on the pleadings.[1] Defendant asserts that plaintiff Concetta DiMedio's wrongful death and survival claims are time-barred as a matter of law. Although the Magistrate to whom this case was referred has crafted a well-written recommendation that the motion be granted, I disagree on the resolution of the controlling question of law and consequently will deny the motion.

## I. FACTS

Plaintiff Concetta DiMedio, administratrix of the estate of Gabriel DiMedio, alleges in this diversity action that her decedent suffered illness and death as a result of exposure within the scope of his employment to asbestos that was manufactured or supplied by the defendant. The complaint states that the plaintiff's decedent died on October 6, 1982. This case was commenced on October 2, 1985. The defendant urges that the wrongful death and survival claims—including counts of negligence, misrepresentation, and failure to warn—are barred by the applicable two-year statutes of limitations.[2] The plaintiff responds that neither she nor the decedent were chargeable with knowledge before the decedent's death that his illness resulted from exposure to asbestos.[3] Thus, her argument goes, the judicially-created "discovery rule" should operate to delay the running of the statutes of limitations until the plaintiff knew or should have known of the connection between asbestos and the decedent's illness.

## II. DISCUSSION

### A. Evidence of State Law

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Substantive law includes statutes of limitations. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Accordingly, authoritative interpretations of the relevant statutes of limitations by Delaware's highest court are outcome-determinative. *See Erie*, 304 U.S. at 78, 58 S.Ct. at 822; *Safeco Insurance Co. v. Wetherill*, 622 F.2d 685, 687 (3d Cir.1980).

Unfortunately, neither the Delaware Supreme Court nor any other Delaware court has addressed whether the discovery rule can delay until some time after the death

1. All of the primary party defendants have joined in the motion except for Consolidated Rail Corp. and Penn Central Corp.

2. The defendant's motion embraced all the claims in the complaint, including strict liability in tort and breach of warranty. At oral argument before the Magistrate, however, plaintiff's counsel indicated that he would not oppose dismissal of these latter counts in light of current Delaware law. The claims for strict liability in tort and for breach of warranty will therefore be dismissed.

3. Gabriel DiMedio died of lymphoma. The plaintiff asserts that medical researchers made no connection between lymphoma and asbestos exposure until 1984.

of the injured person the running of the statute of limitations in wrongful death or survival actions. This Court must therefore predict how the Delaware Supreme Court would decide the issue. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985). In attempting to forecast state law, a federal court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Also pertinent are court decisions in other jurisdictions. *Brown v. Caterpillar Tractor Co.,* 696 F.2d 246, 250 (3d Cir.1982).

### B. The Wrongful Death Claim [4]

Under 10 *Del.C.* § 8107, "[n]o action to recover damages for wrongful death or for injury to personal property shall be brought after the expiration of 2 years from the accruing of the cause of such action." Section 8107 does not state whether a cause of action for wrongful death may "accrue" at some point after the death of the plaintiff's decedent—for example, at the time that the plaintiff discovers a connection between the death and an actionable wrong. The defendant argues that the Delaware Supreme Court would hold that a wrongful death action based on exposure to asbestos accrues at the time the asbestos-related disease first manifests itself and becomes ascertainable or at the time of death, whichever is earlier. Thus,

the discovery rule would toll the statute of limitations in favor of the injured person, but not in favor of his survivors.

Although no Delaware cases have addressed whether the discovery rule extends to wrongful death cases, it is well established in Delaware that the rule may operate to delay the running of the statute of limitations in personal injury cases.[5] In the seminal case of *Layton v. Allen,* 246 A.2d 794 (Del.1968), the Delaware Supreme Court held that in an action for medical malpractice,

> when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable.[6]

*Id.* at 798. The Court stated that it would be unreasonable "to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable by due diligence." *Id.* at 797.

In *Bendix Corp. v. Stagg,* 486 A.2d 1150 (Del.1984), the Court extended the discovery rule announced in *Layton* to latent occupational diseases resulting from asbestos exposure. The Court held that the statute of limitations for a personal injury action in such a case begins to run when the harmful effect first manifests itself and becomes physically ascertainable. *Id.* at 1153. In *Sheppard v. A.C. & S. Co.,* 498 A.2d 1126 (Del.Super.Ct.1985), Judge Poppiti held that the statute of limitations begins to run not simply when the harmful effect first manifests itself, but when the

---

**4.** The plaintiff brings her wrongful death claim pursuant to 10 *Del.C.* § 3704(b). Section 3704(b) was repealed and replaced with 10 *Del.C.* §§ 3721–3725, effective December 1, 1982.

**5.** 10 *Del.C.* § 8119 provides in relevant part that "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the

date upon which it is claimed that such alleged injuries were sustained; ..."

**6.** Section 8118 was the predecessor statute of limitations to 10 *Del.C.* § 8119.

The discovery rule of *Layton* was later modified by a special statute of limitations governing medical malpractice cases. *See* 18 *Del.C.* § 6856; *Pearson v. Boines,* 367 A.2d 653 (Del.Super.Ct.1976), *aff'd,* 386 A.2d 651 (Del.1978).

plaintiff is "chargeable with knowledge that his physical condition was attributable to asbestos exposure." *Id.* at 1132 (quoting *Stagg v. Bendix Corp.*, 472 A.2d 40, 43 (Del.Super.Ct.), *aff'd,* 486 A.2d 1150 (Del. 1984)). The Delaware Supreme Court affirmed this refinement of the discovery rule. *See Keene Corp. v. Sheppard,* 503 A.2d 192 (Del.1986); *see also Nutt v. A.C. & S. Co.,* C.A. No. 80–C–FE–8, slip op. (Del.Super.Ct. July 19, 1984) (discussing the information that must be available before a person is chargeable with knowledge that his physical condition is attributable to asbestos exposure).

The Supreme Court has also applied the discovery rule to actions controlled by 10 *Del.C.* § 8106, the general three-year statute of limitations. In *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A.2d 130 (Del.1974), the Court relied on *Layton* in holding that section 8106 does not begin to run in an action for professional malpractice until the plaintiff is put on notice of the defendant's "inherently unknowable" act or omission. *Id.* at 133. Significantly, the operative language of section 8106 is identical to the language of section 8107, the wrongful death statute of limitations.[7] *See also Pioneer National Title Insurance Co. v. Child,* 401 A.2d 68 (Del.1979) (cause of action for negligent title search does not accrue until plaintiff contracts to sell the property).

Courts in at least eight states have extended to wrongful death actions the discovery rule applicable in personal injury and other tort cases. For example, in *White v. Johns-Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687 (1985), the Supreme Court of Washington held that a cause of action for wrongful death accrued "at the time the wrongful death claimant knew or should have known that the death of the decedent was caused by his exposure to asbestos." *Id.,* 693 P.2d at 695. The Court thus broadened beyond personal injury cases "the general rule of law ... that a cause of action 'accrues' when the plaintiff

discovered or reasonably should have discovered all of the essential elements of a cause of action." *Id.,* 693 P.2d at 692. Noting that "the critical facts about causation may not be discoverable until several years after death," the Court observed:

> It is unreasonable to expect or require, as a matter of law, the ordinary wrongful death claimant to initiate and conduct the massive research necessary to prove the causal link between occupational exposure and resulting cancer; such research takes numerous years and vast resources. This may be particularly true in cases of occupational diseases where information relevant to asbestos related deaths sometimes is not available to the claimants but is in the exclusive control of the defendant corporation.

*Id.,* 693 P.2d at 694 (citing Comment, *Asbestos Litigation: The Dust Has Yet to Settle,* 7 Fordham Urb.L.J. 55, 80 (1978)).

In *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143 (Alaska 1984), the Supreme Court of Alaska held that the discovery rule extends to wrongful death cases because of the rule's fundamental fairness and its consistency with the remedial purposes of the wrongful death statute. *Id.* at 146. The Court noted that "if the discovery rule is not applied to wrongful death actions, a tortfeasor whose conduct has been so grievous as to cause death would be exonerated, while another tortfeasor, guilty of the same conduct except for the fortuity that it merely caused injury, would be held responsible." *Id.* at 147. Other state courts have employed similar rationales in approving the use of some form of a discovery rule in wrongful death cases. *See, e.g., Frederick v. Calbio Pharmaceuticals,* 89 Cal.App.3d 49, 152 Cal. Rptr. 292 (1979); *Coleman v. Hinsdale Emergency Medical Corp.,* 108 Ill.App.3d 525, 64 Ill.Dec. 91, 439 N.E.2d 20 (1982); *Shaughnessy v. Spray,* 55 Or.App. 42, 637 P.2d 182 (1981), *petition denied,* 292 Or. 589, 644 P.2d 1130 (1982); *Pastierik v. Duquesne Light Co.,* 341 Pa.Super. 329,

---

7. Section 8106 reads in relevant part: "No action ... shall be brought after the expiration of

3 years from the accruing of the cause of such action." 10 *Del.C.* § 8106.

491 A.2d 841 (1985), *appeal granted,* 509 Pa. 541, 505 A.2d 254 (1986); *Gosnell v. Ashland Chem.,* 674 S.W.2d 737 (Tenn. App.1984); *Myers v. McDonald,* 635 P.2d 84 (Utah 1981).

On the other hand, courts in at least five states have refused to broaden the discovery rule to toll the statute of limitations in actions for wrongful death. In *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45 (Minn.1982), the Supreme Court of Minnesota held that "wrongful death actions brought in connection with [asbestos-related] deaths accrue either upon the manifestation of the fatal disease in a way that is causally linked to asbestos, or upon the date of death—whichever is earlier." *Id.* at 52. The Court limited the discovery rule to personal injury claims because "[i]t is not in the public interest, absent a showing of fraudulent concealment, to encourage, literally, the unearthing of wrongful death causes of action long after the death has occurred because there is some suspicion that death was caused by a wrongful act." *Id.*

Similarly, in *Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18 (N.D.1981), the Supreme Court of North Dakota held that:

> The discovery rule applicable in malpractice actions does not apply to wrongful death actions because it is the fact of death itself which should indicate a starting point for inquiry regarding a cause of action for wrongful death. When the facts used to determine whether a cause of action exists are equally available to the plaintiff, no additional aid in terms of a discovery period is necessary.

*Id.* at 23. Other state courts have also declined to read a discovery rule into the state's statute of limitations for wrongful death claims. *See, e.g., Trimper v. Porter-Hayden,* 305 Md. 31, 501 A.2d 446 (1985); *Presslaff v. Robins,* 168 N.J.Super. 543, 403 A.2d 939 (App.Div.1979); *Morano v.*

*St. Francis Hosp.,* 100 Misc.2d 621, 420 N.Y.S.2d 92 (N.Y.Sup.Ct.1979).

The critical distinction between cases holding that the discovery rule may toll the statute of limitations in favor of wrongful death claimants and cases holding otherwise is the limiting language of the statutes. Some statutes of limitations clearly provide that actions for wrongful death are barred if not brought within a certain time after the death of the decedent. Given such an unequivocal expression of legislative intent, courts generally hold that the discovery rule cannot delay the running of the statute.[8] *See, e.g., Trimper v. Porter-Hayden,* 305 Md. 31, 501 A.2d 446 (1985); *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45 (Minn.1982); *Presslaff v. Robins,* 168 N.J.Super. 543, 403 A.2d 939 (App. Div.1979); *Morano v. St. Francis Hosp.,* 100 Misc.2d 621, 420 N.Y.S.2d 92 (N.Y.Sup. Ct.1979); *Krueger v. St. Joseph's Hosp.,* 305 N.W.2d 18 (N.D.1981). Other statutes of limitations, including 10 *Del.C.* § 8107, provide instead that actions for wrongful death are barred if not brought within a certain time after they "accrue." Courts faced with this more ambiguous indication of legislative intent uniformly have held that wrongful death actions do not accrue until the plaintiff is chargeable with knowledge that the decedent's death is attributable to some tortious conduct. *See, e.g., Pastierik v. Duquesne Light Co.,* 341 Pa. Super. 329, 491 A.2d 841 (1985), *appeal granted,* 509 Pa. 541, 505 A.2d 254 (1986); *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975); *White v. Johns-Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687 (1985).

The experience of Pennsylvania courts in construing that state's statute of limitations provides an excellent illustration of the difference between accrual and time of death statutes. Until it was repealed in 1978, the statute of limitations for wrongful death actions provided that "the action shall be brought within one year of the

---

**8.** *But see Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143 (Alaska 1984), and *Coleman v. Hinsdale Emergency Medical Corp.,* 108 Ill.App.3d 525, 64 Ill.Dec. 91, 439 N.E.2d 20 (1982), both holding that the discovery rule applied despite statutes of limitations that expressly began to run at the time of death.

death, and not thereafter." Pa.Stat.Ann. tit. 12, § 1603 (repealed). In holding that the discovery rule could not toll the running of this statute, the Supreme Court of Pennsylvania observed:

> Statutory references to the occurrence of an "injury" or the accrual of a "cause of action" are subject to judicial interpretation as to the degree of knowledge a plaintiff must possess before the statute will start to run. In contrast, the requirement that a wrongful death action be brought within two years after a definitely established event,—"death"— leaves no room for construction.

*Anthony v. Koppers Co.*, 496 Pa. 119, 436 A.2d 181, 184 (1981). The current Pennsylvania statute of limitations, however, provides that "[t]he time within which a matter [including a wrongful death action] must be commenced under this chapter shall be computed ... from the time the cause of action accrued." 42 Pa. Cons. Stat.Ann. § 5502. Thus, in *Pastierik v. Duquesne Light Co.*, 341 Pa.Super. 329, 491 A.2d 841 (1985), *appeal granted*, 509 Pa. 541, 505 A.2d 254 (1986), an asbestos case, a panel of the Pennsylvania Superior Court held that the discovery rule applied to the new, accrual type statute.

Shortly after the *Pastierik* decision, the Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would apply the discovery rule to the state's new statute of limitations in a wrongful death case. The Court of Appeals found the statutory change most persuasive, concluding that "the difference in language between the current and prior provisions is so striking that it seems to us highly unlikely that the General Assembly intended to perpetuate a situation that leaves a wrongdoer in the position of wishing he had killed, rather than merely injured, the plaintiff." *McGowan v. University of Scranton*, 759 F.2d 287, 301 (3d Cir.1985). This interpretation is fully consistent with the findings of state courts that have addressed the issue. *See, e.g.*, *Trimper v. Porter-Hayden*, 305 Md. 31, 501 A.2d 446, 450 (1985) ("The plain language of the Maryland wrongful death

statute precludes us from applying ... the approach of the discovery rule cases reviewed above."); *Presslaff v. Robins*, 168 N.J.Super. 543, 403 A.2d 939, 940 (App.Div. 1979) ("It is settled law in this State that the discovery principle is not applicable except in relation to an accrual period of limitations."); *Morano v. St. Francis Hosp.*, 100 Misc.2d 621, 420 N.Y.S.2d 92, 95 (N.Y.Sup.Ct.1979); *White v. Johns-Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687, 692 (1985).

Although 10 *Del.C.* § 8107 is an accrual type statute, the defendant contends that the Delaware Supreme Court would not permit the discovery rule to delay the commencement of the statute's two-year limitation on wrongful death actions. First, the defendant cites *Green v. Loper*, 45 Del. 117, 67 A.2d 856 (Super.Ct.1949), which held that a cause of action for wrongful death "accrues" at the time of death. *Green*, however, was not a case in which the plaintiff was at any time unaware of the connection between the decedent's death and an actionable wrong: the decedent died in an automobile accident. Rather, it stands for the distinct proposition that a wrongful death action generally accrues at the time of death and not at the time of appointment of a personal representative. *Id.*, 67 A.2d at 859–60; *see also White v. Johns-Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687, 691 (1985) (distinguishing *Dodson v. Continental Can Co.*, 159 Wash. 589, 294 P. 265 (1930)).

Second, the defendant offers a statement by the Delaware Supreme Court appearing to suggest its unwillingness to engraft exceptions onto statutes of limitations. In *Delaware Solid Waste Authority v. News-Journal Co.*, 480 A.2d 628 (Del.1984), the Court stated:

> this Court does not "sit as a superlegislature to eviscerate proper legislative enactments. If the policy or wisdom of a particular law is questioned as unreasonable or unjust, then only the elected representatives of the people may amend or repeal it. Judges must take the law as they find it, and their personal predilec-

**1346**

tions as to what the law should be have no place in efforts to override properly stated legislative will."

*Id.* at 634 (quoting *Public Service Comm'n v. Wilmington Suburban Water Corp.,* 467 A.2d 446, 451 (Del.1983)). The Court, however, was in that case dealing with "clear statutory language" in the Delaware Freedom of Information Act, susceptible of only one interpretation. *Delaware Solid Waste Authority,* 480 A.2d at 634 (citing 7 *Del.C.* § 6403(c)). In contrast, the accrual language in the statute of limitations governing wrongful death claims is patently ambiguous. As noted above, the Court has not hesitated to construe identical accrual language in 10 *Del.C.* § 8106, the general three-year statute of limitations, to include a discovery rule. *See Pioneer National Title Insurance Co. v. Child,* 401 A.2d 68 (Del.1979); *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A.2d 130 (Del. 1974). The Supreme Court's statement of principles governing the construction of unambiguous statutes is therefore inapplicable to this case.[9]

The Court's stated rationale for applying the discovery rule in personal injury cases is more enlightening. In *Layton v. Allen,* 246 A.2d 794 (Del.1968), the Court stated:

> The construction of a statute of limitations is not the creation of an exception in violation of the legislative function. It

is the well recognized function of the courts to construe statutes of limitations so as to establish just and reasonable guidelines for different classes of cases in the light of the general policy of repose.

*Id.* at 799. In the case of inherently unknowable injuries, the Court concluded:

> Where choice must be made between the defendants' problems of lost evidence, faded memories, and missing witnesses, on the one hand, and a deprivation to the plaintiff of any and all remedy for the wrong done her, on the other, the law must be construed in favor of the blamelessly ignorant plaintiff and against the interests and convenience of the wrongdoer.

*Id.* There is no reason to believe that the Delaware Supreme Court would view this policy any differently in the context of wrongful death actions.[10]

 Based on the above, I predict that the Delaware Supreme Court would permit the discovery rule to toll the statute of limitations for wrongful death actions, and would hold that a cause of action for an asbestos-related wrongful death accrues when the plaintiff is chargeable with knowledge that the decedent's death is attributable to asbestos exposure. I share the defendant's concern that this open-end-

---

9. Also inapposite are the Supreme Court's decisions holding constitutionally valid Delaware's medical malpractice statute of limitations, 18 *Del.C.* § 6856, which provides in part:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that ... [s]olely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter....

The Court has held that an express time limit on claims arising out of inherently unknowable injuries is reasonable because "[i]t is the legislature and not the courts which must determine

what the finite [limitations] period is." *Dunn v. St. Francis Hosp.,* 401 A.2d 77, 81 (Del.1979); *see Reyes v. Kent Gen'l Hosp.,* 487 A.2d 1142 (Del. 1984). Finding a legitimate legislative purpose behind an explicitly stated limitation, however, is not the same as holding that courts must abstain from extending statutes of limitations for inherently unknowable injuries in cases in which the General Assembly has remained silent or equivocal on the issue.

10. As evidence of the Supreme Court's views, the plaintiff offers portions of a transcript of the oral argument in *Keene Corp. v. Sheppard,* 503 A.2d 192 (Del.1986). It would be undesirable and inappropriate to use the transcript to predict how the justices would decide the case at bar. Oral argument is commonly used as a device to explore whether and to what extent there are weaknesses in an advocate's position. The questions asked do not necessarily reflect the views of those asking the questions.

ed construction of the statute may lead to the filing of claims long after a decedent's death and undermine the general policy of repose supporting the limitation of actions. The General Assembly, however, has in the past modified a statute of limitations in response to judicial application of the discovery rule to establish a finite time limit on claims arising out of inherently unknowable injuries. *See* 18 *Del.C.* § 6856 (medical malpractice statute of limitations). Similar action should be expected if the legislature is dissatisfied with the result in this case.

### C. The Surviving Personal Injury Claims

Under 10 *Del.C.* § 8119, "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; ..." Personal injury actions survive the death of the injured person. 10 *Del.C.* § 3704(a). The discovery rule operates to delay the running of the limitations period of section 8119, at least in cases where the injured person lives long enough to bring suit. *See Bendix Corp. v. Stagg,* 486 A.2d 1150 (Del. 1984); *Layton v. Allen,* 246 A.2d 794 (Del. 1968).

The defendant argues that the Delaware Supreme Court would hold a surviving personal injury claim based on asbestos exposure to expire, at the latest, after two years from the death of the injured person. This conclusion flows entirely from the premise that the Supreme Court would hold that a wrongful death action accrues on the death of the decedent, if not before. In Delaware, personal injury and wrongful death are separate causes of action but are generally "subject to the same infirmities" —that is, one type of action cannot be brought if the other is time-barred. *See Milford Memorial Hospital v. Elliott,* 210 A.2d 858, 860 (Del.1965). Because I believe the Delaware Supreme Court would extend the discovery rule to asbestos-related wrongful death actions, it is reasonable to

predict that the Court would apply the rule to asbestos-related personal injury actions regardless of whether the injured person or his survivors bring suit.

## III. CONCLUSION

For the foregoing reasons, I believe that the Delaware Supreme Court would hold that the running of the statutes of limitations for wrongful death and survival actions was delayed until the plaintiff knew or should have known of the connection between asbestos and the decedent's illness. The defendant's motion for judgment on the pleadings will therefore be denied.