501 A.2d 446

**Charlotte M. TRIMPER et al.**

v.

**PORTER–HAYDEN et al.**

**Sylvia SANDBERG et al.**

v.

**EAGLE–PICHER INDUSTRIES, INC. et al.**

**No. 38, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 17, 1985.

**32**

John Amato, IV, John T. Enoch and Goodman, Meagher & Enoch, on brief, Baltimore, for appellant Sylvia Sandberg et al.

William D. Kurtz, Baltimore, for appellant Charlotte M. Trimper et al.

Robert Dale Klein (John S. Bainbridge, Jr., Andrew E. Shipley and Piper & Marbury, on brief), John W. Geldmacher (H. Emslie Parks, Leland S. Van Koten and Wright & Parks, on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

The question presented in these consolidated appeals is whether wrongful death and survival actions involving exposures to asbestos are time barred when brought more than three years after death or whether some form of discovery rule applies. For reasons hereinafter set forth we shall hold that two separate time bars, each of which began to run at death, had respectively expired prior to suit on these latent disease claims.

One of the plaintiffs below and an appellant here is Charlotte M. Trimper (Charlotte), the widow of Frank R. Trimper (Frank). Charlotte's complaint avers that Frank had been employed from approximately July 1948 until 1978 at the United States Coast Guard Yard in Curtis Bay, Maryland where he was exposed to asbestos and asbestos dust. Frank was hospitalized in January of 1980 and died

February 8, 1980, due to a carcinoma allegedly resulting from exposure to asbestos. Charlotte qualified as personal representative of Frank's estate on May 4, 1983, and instituted the subject wrongful death and survival actions on May 24, 1983, more than three years after Frank's death. A statement of the case pursuant to Maryland Rule 1026(e) recites that Frank "was not aware of any association between his asbestos exposure and his illness during his lifetime" and that Charlotte "filed suit within three years of the date on which she was first aware, or reasonably should have been aware, of that association."

Plaintiff and appellant in the other action is Sylvia Sandberg (Sylvia), widow of Louis Sandberg (Louis). Sylvia's complaint avers that Louis had been employed in various capacities and employments in which he was exposed to asbestos from 1942 until 1980. Louis died November 30, 1980, due to a carcinoma allegedly resulting from exposure to asbestos. Sylvia qualified as personal representative of Louis' estate on July 31, 1984. She instituted the subject wrongful death and survival actions on August 10, 1984, more than three years after Louis' death. A Rule 1026(e) statement of the case recites that Louis "was not informed of any association between his asbestos exposure and his illness during his lifetime, and further that [Sylvia] did not know, and could not in the exercise of reasonable diligence have known until March, 1983 of that association."

The Circuit Court for Baltimore City entered judgment in favor of all of the defendants on each claim in both suits, ruling that the claims were time barred. Each widow appealed to the Court of Special Appeals where the two appeals were consolidated. Appellants then petitioned this Court for the writ of certiorari, the appellees agreed that we should issue the writ, and we did so prior to consideration of the matter by the intermediate appellate court.

Because different statutes are involved, we consider separately the wrongful death claims and the survival claims. Wrongful death claims are governed by Md.Code (1974,

1984 Rep. Vol.), Title 3, Subtitle 9, "Wrongful Death," of the Courts and Judicial Proceedings Article (CJ). Of particular concern here is CJ § 3–904(g), providing that "[a]n action under [the Wrongful Death] subtitle shall be filed within three years after the death of the injured person." Limitations on survival actions, however, are provided by the general statute of limitations, CJ § 5–101. It provides:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

While §§ 3–904(g) and 5–101 both establish periods of three years, in wrongful death cases the three years measures from death, an objectively determinable event in almost all cases, while in survival actions the three years measures from the date of accrual of the cause of action, a less objectively determinable starting point.

# I

■ The Maryland wrongful death statute authorizes two classes of persons to bring such an action. Primary beneficiaries are the wife, husband, parent, and child of the deceased person. CJ § 3–904(a). If there are no such persons who qualify, "any person related to the deceased person by blood or marriage who was wholly dependent upon the deceased" may bring a wrongful death action. CJ § 3–904(b). "[D]amages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death." CJ § 3–904(c). Damages awardable to primary beneficiaries are not restricted to pecuniary loss but may include *solatium* damages. CJ § 3–904(d). Appellants contend that, where the decedent died blamelessly ignorant of being the victim of a tort and where that tort caused death, the eligible beneficiary or beneficiaries should have up to three years from the time when they knew or should have known of the cause of death within which to institute a wrongful death action. In effect, appellants ask that we apply to wrongful death actions the discovery rule laid

down in *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 394 A.2d 299 (1978) for determining the commencement of the running of limitations under CJ § 5–101 in latent disease cases.

*Harig* involved a living plaintiff whose last known exposure to asbestos had been in January of 1955. Shortly after November of 1975 she developed a cough, and on October 27, 1976, she was diagnosed as having a malignant mesothelioma. She instituted suit May 23, 1977. Applying CJ § 5–101 and interpreting the word "accrues" therein, we held that "in situations involving the latent development of disease, a plaintiff's cause of action accrues when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury." 284 Md. at 83, 394 A.2d at 306.

We cannot, however, apply the foregoing rationale to the time bar applicable to wrongful death actions. A long line of precedent in this Court and the unambiguous language of CJ § 3–904(g) prevent adopting a discovery rule for such claims.

> The rule in Maryland is that, since the wrongful death statute created a new liability not existing at common law, compliance with the period of limitations for such actions is a condition precedent to the right to maintain the action. The period of limitations is part of the substantive right of action.

*Slate v. Zitomer,* 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976), citing *Smith v. Westinghouse Electric Corp.,* 266 Md. 52, 55–56, 291 A.2d 452, 454 (1972); *Dunnigan v. Cobourn,* 171 Md. 23, 25–26, 187 A. 881, 884 (1936); and *State v. Parks,* 148 Md. 477, 479–82, 129 A. 793, 795 (1925). *See also Cotham and Maldonado v. Board,* 260 Md. 556, 563, 273 A.2d 115, 119 (1971); *London Guarantee & Accident Co. v. Balgowan Steamship Co.,* 161 Md. 145, 157, 155 A. 334, 338 (1931). Thus, were we, by applying a discovery rule, to allow wrongful death actions to be filed more than

three years after death, we would be violating the legislatively imposed time limitation on the legislatively created right of action.

The enlargement requested by appellants of the time limitation cannot be accomplished in the guise of statutory construction. In plain words CJ § 3–904(g) provides that a wrongful death action "shall be filed within three years after the death of the injured person." There is no room for judicial interpretation. When the problem presented here has arisen under the wrongful death statutes of other states which measure the time within which suit is to be instituted by a fixed period "after death," the majority of courts hold that the statute leaves no room for judicial adoption of some form of discovery rule. *See Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548 (3d Cir.1985) (former Pennsylvania statute); *Cadieux v. International Telephone and Telegraph Corp.,* 593 F.2d 142 (1st Cir.1979) (Rhode Island statute); *Bazdar v. Koppers Co.,* 524 F.Supp. 1194 (N.D.Ohio 1981); *Stiles v. Union Carbide Corp.,* 520 F.Supp. 865 (S.D.Tex.1981); *Pollard v. United States,* 384 F.Supp. 304 (N.D.Ala.1974); *Presslaff v. Robins,* 168 N.J. Super. 543, 403 A.2d 939 (1979); *Morano v. St. Francis Hospital,* 100 Misc.2d 621, 420 N.Y.S.2d 92 (1979); *Ness v. St. Aloisius Hospital,* 301 N.W.2d 647 (N.D.1981); *Anthony v. Koppers Co.,* 496 Pa. 119, 436 A.2d 181 (1981) (plurality of three Justices, with two Justices concurring in the result); *Gravinese v. Johns-Manville Corp.,* 324 Pa.Super. 432, 471 A.2d 1233 (1984).

There are cases to the contrary. Four of them involve the Illinois wrongful death statute which provides that such actions are to be commenced "within 2 years after the death" of the decedent. A district of the Appellate Court of Illinois applied a discovery rule to that statute in an airplane crash case in which the wreckage, and the fact of death, had not been discovered until more than two years after the last radio communication with the plane. The court balanced the difficulty of proof created by the passing of time against the hardship to the plaintiff. *Praznik v.*

*Sport Aero, Inc.*, 42 Ill.App.3d 330, 355 N.E.2d 686 (1976). *Praznik* became part of the authority cited for applying a discovery rule to a wrongful death claim based on alleged medical malpractice in *Fure v. Sherman Hospital*, 64 Ill. App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (1978). In that case one of the plaintiff's arguments was that the applicable statute was not the wrongful death act but a special act relating to medical malpractice claims under which limitations were to be measured from "the date on which the claimant knew ... of the injury or death," and that limitations did not begin to run until the claimant knew of the negligent act or omission which caused death. Because much of the *Fure* opinion is a discussion of policy, it is unclear whether the court adopted the plaintiff's argument or applied a discovery rule to the "after death" provision of the wrongful death statute. *Praznik* and *Fure* were followed in two latent disease, wrongful death cases in the United States District Court for the Northern District of Illinois, partly because they were Illinois appellate decisions on point and thus were controlling authority for diversity cases, and partly for policy reasons. *See Matter of Johns-Manville Asbestosis Cases*, 511 F.Supp. 1235 (N.D.Ill.1981) and *Eisenmann v. Cantor Brothers, Inc.*, 567 F.Supp. 1347 (N.D.Ill.1983).

A discovery rule was applied in *Frederick v. Calbio Pharmaceuticals*, 152 Cal.Rptr. 292, 89 Cal.App.3d 49 (1979), a medical drug, products liability, wrongful death case. The court reasoned that the applicable period of "within one year from the date of death" was a pure statute of limitations and not a condition on a statutory right because, historically, the provision was but one subsection of the multi-sectioned general statute of limitations. The court also relied on *Wohlgemuth v. Meyer*, 139 Cal.App.2d 326, 293 P.2d 816 (1956) which had held that limitations on a medical malpractice, wrongful death action commenced running on discovery of the death's negligent cause.

In Alaska a wrongful death action is to be "commenced within two years after the death." *Hanebuth v. Bell*

*Helicopter International,* 694 P.2d 143 (Alaska 1984) allowed a wrongful death suit to proceed which was filed in 1982, shortly after the wreckage from a 1974 helicopter crash had been located in a remote area. The court applied the discovery rule because of "fundamental fairness," because "it is consistent with the purposes of the act," and because it avoids "unjust and absurd results." *Id.* at 146. The court said it was "profoundly unfair to deprive a litigant of his right to bring a lawsuit before he has any reasonable opportunity to do so." *Id.* at 147. "[A] tortfeasor whose conduct has been so grievous as to cause death would be exonerated, while another tortfeasor, guilty of the same conduct except for the fortuity that it merely caused injury, would be held responsible." *Id.*

The plain language of the Maryland wrongful death statute precludes us from applying to CJ § 3–904(g) the approach of the discovery rule cases reviewed above.[1] We shall, however, review the policy considerations more fully in part II C hereof where they are more appropriately considered.

## II

The survival statute, unlike the wrongful death act, does not create a new cause of action unknown to common law. Rather, it changes the rule at common law under which certain actions by or against decedents abated with death. CJ § 6–401(a) provides that "[a] cause of action at law, whether real, personal or mixed, except slander, survives

---

1. The cases before us factually do not present any issue of whether the beneficiaries under the wrongful death statute may bring a wrongful death action where the decedent died as a result of a latent disease after having known of the nature and cause thereof for more than three years prior to death. In this connection compare *Binnix v. Johns-Manville Products Corp.,* 593 F.Supp. 1180 (D.Md.1984), holding that wrongful death is a new cause of action which accrues at death, with CJ § 3–901(e), which defines "wrongful act," for purposes of wrongful death statute, to mean "an act ... which would have entitled the party injured to maintain an action and recover damages if death had not ensued."

the death of either party." A related provision, Md.Code (1974), § 7–401(x) of the Estates and Trusts Article (ET), provides in relevant part that a personal representative

may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted, except that:

(1) A personal representative may not institute an action against a defendant for slander against the decedent during the lifetime of the decedent.

The survival action phase of the instant cases involves the construction of the word "accrues" in CJ § 5–101. Appellants, in their capacities as personal representatives, urge that the survival claims did not accrue until Charlotte and Sylvia respectively knew or should have known of the association between their husbands' exposures to asbestos and the diseases suffered by the decedents. Appellants submit that this result is either required by, or is the logical extension of, *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981) and that this result is reached in the better reasoned cases from other jurisdictions. Appellees deny that *Poffenberger* controls or preordains the result in survival actions. They undertake to turn the discovery rule analysis against the appellants by contending that, if no cause of action accrues until someone discovers it after the decedent's death, then the decedent had no cause of action at the time of death, and there is therefore nothing on which the survival statute can operate. Appellees further submit that under the preferable interpretation of limitations statutes which start the clock running for purposes of wrongful death or survival suits when the action accrues, "accrual" occurs no later than at the decedent's death.

## A.

We must consider first whether *Poffenberger* established a *post mortem* as well as an *inter vivos* discovery rule. *Poffenberger* was the culmination of a process which began

in 1917 when, in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), this Court applied a form of discovery rule in a medical malpractice case. Thereafter, accrual under the general limitations statute was determined by a discovery standard in cases involving the negligent design and construction of a stone wall on another's land;[2] negligent surveying;[3] malpractice by lawyers,[4] accountants,[5] and architects;[6] past, present, and prospective damages caused by a permanent nuisance;[7] negligence or strict liability where the initial injury was a latent disease;[8] and libel.[9] *Poffenberger* reviewed these cases and concluded:

> Having already broken the barrier confining the discovery principle to professional malpractice, and sensing no valid reason why that rule's sweep should not be applied to prevent an injustice in other types of cases, we now hold the discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong. [290 Md. at 636, 431 A.2d at 680.]

In the context of the background against which *Poffenberger* was written, its holding that "the discovery rule [will] be applicable generally in all actions" represents an abandonment of the case-by-case approach under which this Court would decide whether or not the discovery rule was

2. *Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945).

3. *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969).

4. *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969).

5. *Feldman v. Granger,* 255 Md. 288, 257 A.2d 421 (1969).

6. *Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969).

7. *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 404 A.2d 1064 (1979).

8. *Harig, supra.*

9. *Sears, Roebuck & Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980).

to be applied to a given type of action. *Poffenberger* announced that the general test for accrual would be discovery. *Poffenberger* did not, however, expressly or by necessary implication address the issue now before us. None of the cases in the line of decisions applying a discovery rule dealt with an injured person who had died, either due to the injury complained of or from some other cause, without having brought suit based on the injury. Indeed, *Poffenberger* quoted from *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397, 401, 412 A.2d 1240, 1242 (1980) the statement that " 'fairness to a plaintiff who has not slept on his rights justifies exceptions to [the] general rule.' " The plaintiff referred to had to be a living person because the type of action involved in *Ulman*, libel, does not survive. *See Cant v. Bartlett*, 292 Md. 611, 440 A.2d 388 (1982). The focus of *Poffenberger* 's concern was with the injured plaintiff who discovered the wrong while living but more than three years after some legal injury had occurred.

### B.

Nor do we accept appellees' argument that the personal representative plaintiffs' claims necessarily fail if a discovery rule is applied. Appellees say that if the personal representatives' claims do not accrue until they discovered the cause of the latent diseases from which the decedents died, then no cause of action accrued during the lifetime of the decedent, and therefore no rights can pass to the personal representatives under the survival statute. The principal authority in support of this approach is *Anthony v. Koppers Co., supra*, 496 Pa. 119, 436 A.2d 181. *Anthony* was applied by the Third Circuit in *Ciccarelli v. Carey Canadian Mines, Ltd., supra*, 757 F.2d 548, because the federal court was bound by the state court holding, even though the federal court considered the result "admittedly odd." 757 F.2d at 554. *See also McDaniel v. Johns-Manville Sales Corp.*, 511 F.Supp. 1241, 1243–44 (N.D.Ill.1981); *Johnson v. Koppers Co.*, 524 F.Supp. 1182, 1191–92 (N.D. Ohio 1981).

Appellees' argument confuses two applications of the concept of accrual in the law. The law is concerned with accrual in the sense of testing whether all of the elements of a cause of action have occurred so that it is complete. There must be both the *injuria* and the *damnum* of the common law. *See Oxtoby v. McGowan,* 294 Md. 83, 94, 447 A.2d 860, 866 (1982). But the injured party need not know that he has suffered a legally cognizable injury which has resulted in harm in order to have a complete cause of action. Thus we could say in *Harig, supra,* 284 Md. at 76, 394 A.2d at 302, that "[i]n Maryland, the general rule is that limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time the wrong is discovered." This was because, prior to *Poffenberger,* the time of accrual of a cause of action for general limitations purposes and the time when the cause of action was conceptually complete were one and the same. Adoption of a discovery rule for limitations in latent disease cases in *Harig,* and later for a broader band of cases in *Poffenberger,* was simply a judicial construction of the word "accrues" in CJ § 5–101. The discovery rule does affect when limitations under § 5–101 will begin to run by adding an additional element, knowledge, to "accrues," but the discovery rule does not change the time when a cause of action becomes conceptually complete.[10] The discovery rule simply protects from the running of limitations a person who has suffered *injuria* and *damnum* giving rise automatically to a cause of action of which that person is blamelessly ignorant. *See Redeker v. Johns-Manville Products Corp.,* 571 F.Supp. 1160, 1166–68 (W.D.Pa.1983).

---

**10.** The law does not consider that a motion to dismiss for failure to state a claim searches the complaint for an averment that the plaintiff knows of the injury and harm. This is not because knowledge is implicit in the fact that a complaint is filed but because knowledge of the claim is not an element of the claim. A comatose accident victim can have a complete cause of action. *See* CJ § 5–201 as to the tolling of limitations against persons under certain disabilities.

Consequently, the decedents in the cases before us possessed causes of action which survived their deaths. The question is for how long? Three years, or until discovery by an heir or creditor, plus three years?

## C.

In this part we shall consider principally decisions involving statutory time bars to wrongful death or survival actions which run from the date of accrual. Such cases are relevant to the survival actions before us, but, as will appear, *infra*, no general principle may fairly be drawn from the cases.

The litigation in *Johnson v. Koppers Co., supra*, 524 F.Supp. 1182, included survival actions growing out of respiratory diseases and governed by an Ohio limitations statute requiring suit "within two years after the cause thereof arose." The court read "cause" to mean the cause of action. Relying on and quoting from *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1158 (6th Cir.1981), the court held that claims based on insidious diseases due to exposure to asbestos accrue " 'when the disease has manifested.' " 524 F.Supp. at 1191. "[A] disease is manifested at the time that there is an outward, perceptible sign of the disease and not at the time that the cause of the disease has, or reasonably should have been discovered." *Id.* The diseases had been diagnosed, and thus had become manifest, in certain of the plaintiffs. As to the survival claims the court said:

> Further, to apply the discovery rule so as to toll the running of the statute of limitations beyond the death of injured individuals would be contrary to the purpose of the statute of limitations of preventing stale claims. Allowing the discovery rule to run past the date of death would allow survival actions to be brought *at any time* the decedent's estate through medical advancement or otherwise discovered the cause of the decedent's injuries that were suffered during his lifetime. [*Id.*, n. 5 (emphasis in original).]

*Redeker v. Johns-Manville Products Corp., supra,* 571 F.Supp. 1160, presented wrongful death and survival actions arising out of deaths resulting from diseases caused by exposure to asbestos. The controlling Pennsylvania statute was enacted in 1978 and set a two-year period of limitations beginning with accrual of the cause of action. Prior Pennsylvania cases, including *Anthony v. Koppers Co., supra,* had dealt with the predecessor statute. Concluding a diversity analysis of Pennsylvania law the court held:

We believe, based on the foregoing, that the Pennsylvania Supreme Court will read the statute in the light of the existing, and now well-established, law of Pennsylvania relative to the application of the discovery rule to personal injury actions and conclude that the statute commences to run when the victim had, or reasonably should have had, the knowledge set forth by the Superior Court in *Anthony [v. Koppers,* 284 Pa.Super. 81], 425 A.2d [428] at 436 [ (1980) ], but commences at the latest on the death of the victim, so that all actions must be brought within two years of that date at the latest.

We believe that this ruling is entirely consistent with the ruling of the Pennsylvania Supreme Court in *Anthony* that the discovery rule will not be extended to the personal representative of one whose death resulted from the tortious conduct of another, and yet is in harmony with that body of Pennsylvania law relative to the application of the discovery rule in personal injury actions which has been in place for decades. [571 F.Supp. at 1168.]

The *Redeker* analysis that an undiscovered cause of action accrued for limitations purposes at death was followed in *Powell v. Johns-Manville Corp.,* 342 Pa.Super. 544, 493 A.2d 724 (1985).

Other courts have, however, reached a different result under the 1978 Pennsylvania statute. *Pastierik v. Duquesne Light Co.,* 341 Pa.Super. 329, 491 A.2d 841 (1985) held that both wrongful death and discovery actions ac-

crued upon discovery because it would be unjust to apply the discovery rule in personal injury cases but not to wrongful death and survival actions. The United States Court of Appeals for the Third Circuit considered the same statute in *McGowan v. University of Scranton*, 759 F.2d 287 (3d Cir.1985). That court noted that, "to the extent that the *Pastierik* holding rests only on the basis of judicial discretion to implement 'equitable' concerns, its authority is highly questionable." *Id.* at 292. The Third Circuit essentially reasoned that the intent of the Pennsylvania legislature in the 1978 enactment was to have limitations operate uniformly with respect to both wrongful death and survival actions. The change in the beginning point of the time measurement in the wrongful death statute from "after death" to "accrual" was viewed as putting wrongful death actions in harmony with the Pennsylvania decisions that apply the discovery rule and as changing the result which the Pennsylvania Supreme Court had reached in *Anthony, supra.* Although *Anthony* had rejected a discovery rule for survival actions under an "accrual statute," the Third Circuit, recognizing that survival actions present a closer case, applied the discovery rule to survival actions in order to achieve the perceived legislative goal of uniformity.

Limitations under the Federal Tort Claims Act expire two years after the claim accrues. 28 U.S.C. § 2401(b). In a wrongful death case where the decedent died from exposure to beryllium at Los Alamos, suit was filed more than two years after death but less than two years after the cause of death was discovered. The district and circuit courts held that the action accrued at death. *Kington v. United States*, 265 F.Supp. 699 (E.D.Tenn.1967), *aff'd*, 396 F.2d 9 (6th Cir.), *cert. denied*, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968). That precedent was adhered to in a diversity jurisdiction case under the Tennessee wrongful death statute where the survivor plaintiff argued that the action had not accrued until plaintiff's discovery that asbestos could have been a contributing factor in causing the decedent's death. *Woody v. Johns-Manville Sales Corp.*,

491 F.Supp. 1073 (E.D.Tenn.1980). The court touched another base by saying that the Tennessee discovery rule was satisfied at the time of death because the plaintiff at that time had all the information from which the cause of death could be ascertained.

Decisions under the Federal Tort Claims Act are by no means uniform. The split of authority is reviewed in *Sanborn v. United States*, 764 F.2d 637 (9th Cir.1985). That litigation consisted of wrongful death and survival actions by a widower whose wife had died from Guillian-Barre Syndrome resulting from swine flu vaccine. At the time of death the medical and general communities were still ascertaining whether a victim of the disease had any rights against the manufacturer and administrator of the vaccine. Under those facts the court said "fundamental fairness concerns must prevail" and applied a discovery rule. *Id.* at 640. A particularly appealing fact situation for the application of a discovery rule under the Federal Tort Claims Act is found in *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) where the plaintiff first learned in 1975 that twenty-two years earlier the plaintiff's decedent had died from the injection of a mescaline derivative administered to him while he unknowingly served as a human guinea pig in an Army chemical warfare experiment.

A Minnesota wrongful death statute required suit to be commenced "within three years after the act or omission." In *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45 (Minn. 1982), a decedent had died of an abdominal cancer in 1976 and suit was filed in 1980 after the plaintiff learned of a close link between asbestos exposure and the cancer. The court held that the action accrued at death and refused to toll the running of limitations until discovery. It said:

> It is not in the public interest, absent a showing of fraudulent concealment, to encourage, literally, the unearthing of wrongful death causes of action long after the death has occurred because there is some suspicion that death was caused by a wrongful act.

We hold that the wrongful death act is subject to tolling where a cause of action is fraudulently concealed. We further hold that, because of the unique character of asbestos-related deaths, wrongful death actions brought in connection with those deaths accrue either upon the manifestation of the fatal disease in a way that is causally linked to asbestos, or upon the date of death—whichever is earlier. [*Id.* at 52.]

*Walker v. Beech Aircraft Corp.*, 320 So.2d 418 (Fla.Dist. Ct.App.1975) was an airplane crash case governed by a Florida statute which required a wrongful death action to be commenced "within two years," but which did not specify the beginning point of the two years. The plaintiff sued the airplane's manufacturer more than two years after death, asserting that a recently discovered design defect had caused the crash. The court held the two years ran from accrual and the cause of action against the manufacturer had accrued at death.

In what appears to be a narrow holding, the Supreme Court of Utah applied a discovery rule to an accrual type of limitations statute on wrongful death claims where the fact of death was unknown. *Myers v. McDonald*, 635 P.2d 84 (Utah 1981) involved a fourteen-year-old boy who had been killed in an automobile accident in a city at some distance from his place of residence but whose body was not identified by the authorities. The police meanwhile were causing a search to be made for the boy as a runaway.

An excellent exposition of the position advocated by the appellants is found in *White v. Johns-Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687 (1985). That latent disease case involved both wrongful death and survival actions which were required by statute to be brought within three years "after the cause of action shall have accrued." The court traced the same long delay from onset of the disease to discovery of causation which largely prompted this Court in *Harig* to adopt a discovery rule for such cases. The Washington court emphasized the unreasonableness of expecting

an ordinary wrongful death claimant to conduct the massive research necessary to prove the causal link in such cases. The court believed "the problem of 'unearthing' wrongful death causes of action to be minimal compared to the hardships imposed on the victims unblamably left without a remedy." 103 Wash.2d at 355–56, 693 P.2d at 694. With respect to the survival action the court rested on the reasoning of one of the Illinois cases, *Eisenmann v. Cantor Brothers, supra,* 567 F.Supp. 1347, saying:

> First, [ *Eisenmann* ] noted that the survival statute related to a right of action for personal injury arising during the life of the injured person. Second, the court stressed that the general policy of survival statutes was to ensure that wrongdoers actually were not relieved of some portion of their liability because their acts had been so grievous as to cause death. Third, the court emphasized that in the [case] of [insidious] occupational diseases the discovery rule was often the only fair means by which a statute of limitation fairly can be applied to survival and wrongful death actions. Finally, the court rejected the holding of *McDaniel v. Johns-Manville Sales Corp.,* [*supra,* 511 F.Supp. 1241,] in which the court refused to apply the discovery rule to survivorship actions. The *Eisenmann* court noted:
>
>> "While it is true that the [wrongful death and survivorship] Acts provide for different types of *damages,* the two causes of action are similar in their fundamental respects. The elements of both causes of action are essentially the same, as are the defenses generally available. Additionally, experience teaches us that both causes of action are predicated on the same set of operative facts. If, as is manifest, Mr. Eisenmann would have had the benefit of the discovery rule if he brought a tort action in his own name, neither policy nor logic will support a contrary result due to his death."
>
> [103 Wash.2d at 359–60, 693 P.2d at 696–97.]

Needless to say, the cases cited in part I hereof which would convert an "after death" wrongful death limitations statute into one reading "after discovery" would have no difficulty in converting an "after accrual" survival statute of limitations provision into an "after discovery" provision. *See also Shaughnessy v. Spray*, 55 Or.App. 42, 637 P.2d 182 (1981) (applies a discovery rule to a statute requiring suit "within three years after the occurrence of the injury causing the death of the decedent.").

## D.

Appellants' argument, on the one hand, emphasizes the impact on the survivor plaintiff and rests on a rigorous, legal logic. A wrong had been done to the decedent who died without realizing that he possessed a cause of action which has become part of the decedent's estate, so that, if and when a reasonably diligent personal representative knows or should know the asset exists, the personal representative should be able to assert the cause of action. Appellees' argument, on the other hand, emphasizes the impact on defendants and rests on practicality. Appellees would combine the discovery rule and the policy of repose historically associated with statutes of limitations so that the person who immediately suffers the injury is protected throughout that person's lifetime by the discovery rule but, on death, accrual under CJ § 5–101 would occur. The personal representative would then have three years from death within which to sue. Thereafter the cause of action would be barred whether or not it had been discovered.

As the review of the cases in part II C hereof manifests, the weight which one might assign to the competing, and indeed conflicting, considerations can vary depending on whether the case involves a latent disease, medical malpractice, strict products liability, lack of knowledge of the fact of death, or some other theory of liability or other factor. The review of the evolution of the discovery rule in Maryland, set out in part II A, demonstrates the high degree of flexibility in the judicial interpretation of "accrues" in CJ

§ 5–101. A construction of § 5–101 in terms of after death claims and the discovery rule need not be one applicable to all types of cases initially instituted as a survival action. We accordingly limit the holding in the survival actions before us to the application of the discovery rule laid down in *Harig* to latent disease cases which are instituted initially as survival actions.

E.

There are relatively clear signals in the present Maryland statutes revealing the General Assembly's evaluation of the competing policy considerations presented here. As *White v. Johns-Manville Corp.*, *supra*, and *Eisenmann v. Cantor Brothers*, *supra*, point out, the liability issues and the defenses will ordinarily be the same in both wrongful death and survival cases. By the plain language of CJ § 3–904(g) the General Assembly has already determined that liability under the wrongful death statute should not remain open more than three years after death. Appellants' position with respect to survival actions would be inconsistent with the policy underlying that legislative determination.

We need not say that the policy of CJ § 3–904(g) is solely determinative of this appeal because the same policy is also reflected in the worker's compensation statutes dealing specifically with latent occupational diseases. When enacted by Ch. 465 of the Acts of 1939 the occupational disease statutes provided in part that "[i]f no claim for disability or death from an occupational disease be filed with the State Industrial Accident Commission within one (1) year from the date of disablement or death, as the case may be, the right to compensation for such disease shall be forever barred...." Md. Code (1939), Art. 101, § 39. Chapter 153 of the Acts of 1967 added a discovery rule so that the statutory provision then read:

> If no claim for disability or death from an occupational disease be filed with the Workmen's Compensation Commission within two (2) years from the date of disablement or the date when the claimant first has actual knowledge

such disablement was caused by his employment, or death, as the case may be, the right to compensation for such disease shall be forever barred.... [Md. Code (1957, 1964 Repl. Vol., 1968 Cum. Supp.), Art. 101, § 26.]

Chapter 671 of the Acts of 1973 amended Art. 101, § 26 in the following fashion (capitals indicate new matter; brackets indicate matters deleted):

If no claim for disability or death from an occupational disease be filed with the Workmen's Compensation Commission within two (2) years, OR IN THE CASE OF A PULMONARY DUST DISEASE WITHIN THREE YEARS, from the date of disablement OR DEATH, or the date when the [claimant] EMPLOYEE OR HIS DEPENDENTS first has actual knowledge such disablement was caused by [his] THE employment, or death, as the case may be, the right to compensation for such disease shall be forever barred....[11]

Amendments to the same provision effected by Ch. 706 of the Acts of 1980 included deleting the second "or death," together with "as the case may be," so that the provision read at the time of the filing of the survival actions now before us and today reads as follows:

If no claim for disability or death from an occupational disease be filed with the Workmen's Compensation Commission within 2 years, or in the case of a pulmonary dust disease within three years, from the date of disablement

---

11.  The statute in the 1973 form presented a construction question as to whether the discovery rule applied to claims for death benefits. The problem is whether the second reference to death is misplaced or is surplusage which should have been deleted as part of the 1973 amendment.  Under the general rule that no words should be treated as surplusage, the time limits of § 26 would be read to provide for the filing of claims

within two years or, in the case of a pulmonary dust disease, within three years from the date of disablement or death, or from the date when the employee or his dependents first have actual knowledge such disablement or death, as the case may be, was caused by the employment....

or death, or the date when the employee or his dependents first has actual knowledge that the *disablement* was caused by the employment, the right to compensation for the disease shall be forever barred.... [Md. Code (1957, 1985 Repl. Vol.), Art. 101, § 26(a)(4) (emphasis added).]

The 1980 amendments brought the above-quoted part of § 26(a)(4) into roughly parallel construction with § 26(a)(1) which reads:

(a) *Notice to employer; limitation.*—

(1) Written notice shall be given to the employer of an occupational disease by the employee or someone in his behalf within 1 year after the employee knows or has reason to believe he is suffering from an occupational disease. In case of death from an occupational disease, written notice of death shall be given to the employer within 1 year.

Thus, for the purposes of worker's compensation in occupational disease cases, a discovery rule applies to claims for disability benefits, but claims for death benefits are barred two or three years after death whether or not the employee's dependents knew that death was caused by the employment.

■ We shall apply here the same policy of repose which underlies the cutoff of the tail on worker's compensation liability reviewed above. We hold, paraphrasing the holding of *Harig*, 284 Md. at 83, 394 A.2d at 306, that in situations involving the latent development of disease, any cause of action of the injured person accrues either (1) when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury, or (2) at death, whichever first occurs.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.