987 A.2d 116

ST. PAUL TRAVELERS

v.

Robert MILLSTONE as Trustee of Montgomery
Scrap Corporation Profit Sharing Plan.

No. 31, Sept. Term, 2009.

Court of Appeals of Maryland.

Jan. 15, 2010.

Joel P. Williams (David D. Gillis of Niles, Barton & Wilmer, LLP of Baltimore), on brief, for petitioner.

Sue Lawless (McMillan Metro, P.C. of Rockville), on brief, for respondent.

Edward G. Gallagher, for Brief of Amicus Curiae, The Surety & Fidelity Association of America in Support of Petitioner Urging Reversal of the Court of Special Appeals.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE (retired, specially assigned), and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

RODOWSKY, J.

Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article (CJ) provides:

**"Three-year limitation in general.**

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

Maryland Code (1975, 2003 Repl.Vol.), § 12–104 of the Insurance Article (IA) provides:

**"Validity and effect of limitations periods.**

"(a) *In general.*—A provision in an insurance contract or surety contract that sets a shorter time to bring an action under or on the insurance contract or surety contract than required by the law of the State when the insurance contract or surety contract is issued or delivered is against State public policy, illegal, and void.

"(b) *Effect.*—If an insurance contract or surety contract contains a provision that is illegal under this section:

"(1) a State court may not give effect to the provision; and

"(2) a defense to liability under the insurance contract or surety contract may not be based upon the shorter limitation period."

The principal issue in this case is whether IA § 12–104 permits an insurer contractually to provide that the time of accrual of a cause of action on the policy is earlier than the time of accrual under CJ § 5–101, so long as the period within which suit must be brought following the contractually defined time of accrual is at least three years. As we shall explain below, we hold that, under the contractual limitations period in the policy presented here, IA § 12–104 is violated.

The facts relevant to the above-described issue are undisputed. Effective October 1, 1998, Travelers Casualty and Surety Company of America, referred to in this case as the Petitioner, St. Paul Travelers (Insurer or Travelers), issued a commercial crime policy (the Policy) to Montgomery Scrap Corporation Profit Sharing Plan (the Plan) providing coverage for loss to the Plan resulting directly from employee dishonesty occurring during the Policy period, subject to certain conditions, limitations, exclusions, and other terms of the insurance contract. The Policy was renewed annually and was in force at the times of the losses involved in this case. Between April 1997 and June 2002, a Montgomery Scrap employee stole approximately $49,000 from the Plan. The Plan discovered this loss in October 2002. The employee was prosecuted, pleaded guilty to theft over $500, and made partial

restitution.[1] The Plan gave notice of the loss to Travelers in March 2005 and presented its proof of loss on April 6, 2005. On January 23, 2006, this action was filed in the Circuit Court for Montgomery County. It was brought by the respondent, Robert Millstone, as Trustee of the Plan, inasmuch as he had reimbursed the Plan for its net loss.

Travelers raised a number of defenses, which are not before us and on which we do not intimate any opinion. The sole issue before us is a statute of limitations defense on which the Circuit Court granted Travelers summary judgment. The defense is based upon one of the General Conditions of the Policy. In the body of the Policy, the subject condition reads:

"7. Legal Action Against Us: You may not bring any legal action against us involving loss:

"a. Unless you have complied with all the terms of this insurance; and

"b. Until 90 days after you have filed proof of loss with us; and

"c. Unless brought within 2 years from the date you discover the loss."

By a Maryland Changes Endorsement (the Endorsement), the two years referred to in the above-quoted condition is enlarged to three years. The summary judgment in favor of Travelers was granted solely on the ground that more than three years had elapsed from the Plan's discovery of the loss to its institution of this suit.

Respondent appealed to the Court of Special Appeals, which reversed. *Robert Millstone as Trustee of Montgomery Scrap Corp. Profit Sharing Plan v. St. Paul Travelers*, 183 Md.App. 505, 962 A.2d 432 (2008). The Court first looked to the normal rules governing the statute of limitations in contract actions, saying:

"Applying the normal rules that govern contract actions in Maryland, the statute of limitations for a breach of contract

---

1. In a second motion for summary judgment on behalf of the Plan, the net loss was stated to be $38,000.

action against the insurer could not have begun to run prior to the time Travelers was called upon to perform its obligations under the contract, and that date, at the very earliest, was April 6, 2005 [when the proof of loss was submitted]. Consequently, a suit filed on January 23, 2006, would have been well within the three year statute of limitations that is generally applicable to contract actions."

*Id.* at 512, 962 A.2d at 437. Addressing the Insurer's principal argument that the Endorsement did not violate IA § 12–104 because it contractually established only a time of accrual of the cause of action, as distinguished from shortening the period of limitations, the Court reviewed certain decisions relied upon by Travelers. The Court concluded:

"In contrast to the accrual agreements in those cases, the provision in the Travelers policy makes no mention of accrual of actions. Although the Travelers provision does purport to set a three year limitation period beginning with the date of discovery of a loss, it does not establish the date upon which an insured may *commence* an action for an alleged breach of contract on the part of the insurer. The provision purports to establish a final date for bringing legal action but does not establish the point at which the insured may first file suit for any alleged breach of contract."

*Id.* at 515, 962 A.2d at 438.

Travelers applied to this Court for the writ of certiorari, which we granted. *St. Paul Travelers v. Millstone,* 408 Md. 149, 968 A.2d 1064 (2009). The petition presented five questions for review, but we need address only the first issue presented, namely:

"1. Does the ... [E]ndorsement ... requiring that legal action against the insurer involving loss be brought within 3 years from the date the insured discovers the loss, violate Section 12–104 of the Insurance Article?" [2]

Whether the Circuit Court properly granted summary judgment on this issue is a question of law.

---

2. The other questions presented by Travelers are:

Petitioner's argument in this Court rests on distinguishing between the contractual accrual of an action and the statutory period of limitations. The submission is that the Endorsement fixes by contract the time of accrual of an action on the Policy, and that such a contract does not violate IA § 12–104, even if the contractual point in time of accrual is earlier than that operative under the statute of limitations. Under the Insurer's argument, IA § 12–104 is not at all concerned with the time of accrual, but only with the length of the period of time provided by a contractual limitations provision. Because the Endorsement provides a three-year period, the Insurer concludes that there is no violation of IA § 12–104.

The Court of Special Appeals' response to this argument denied that the Endorsement even addressed accrual or, at least, denied the effectiveness of the language of the Endorsement to achieve a change in the time of accrual from the time of accrual normally utilized when applying the statute of limitations. Under the normal rule, a cause of action would

---

"2. Does the requirement in the Legal Action clause in the Maryland Changes endorsement to an insurance policy providing that the insured may not bring suit against the insurer until 90 days after the insured has filed proof of loss with the insurer, operate to impermissibly shorten the three-year period of limitations in violation of Section 12–104 of the Insurance Article?

"3. Does the Legal Action clause in the Maryland Changes endorsement to an insurance policy requiring that legal action against the insurer involving loss be brought within 3 years from the date the insured discovers the loss, establish the insured's discovery of loss as the agreed accrual date for commencement of the 3–year limitation period?

"4. Does a provision in the Legal Action clause in the Maryland Changes endorsement to an insurance policy requiring that legal action against the insurer involving loss be brought within 3 years from the date the insured discovers the loss, establish a policy condition or covenant with which substantial compliance by the insured is required?

"5. Was the circuit court legally correct in determining that suit against an insurer under an insurance policy was barred by the policy's Legal Action clause requirement that suit be brought within three years from the date the insured discovers the loss, where it was undisputed that the insured discovered the loss more than three years before it filed suit?"

not arise until the insurer breached the contract by erroneously denying the claim in whole or in part, or by withholding any decision on the claim for an unreasonable length of time. Here, the claim, as evidenced by the Plan's proof of loss of April 6, 2005, had not been explicitly rejected when this suit was filed on January 23, 2006. But, under the construction of the Endorsement by the Court of Special Appeals, there was no contractual prohibition against early commencement of the suit. Further, because the three-year period of limitations under CJ § 5–101, pursuant to the normal rule, cannot have begun to run earlier than the filing of the proof of loss, and because less than three years elapsed between April 6, 2005, and January 23, 2006, the suit was not barred by limitations.

■ We need not express agreement or disagreement with the above analysis. If the Endorsement does not contractually alter the time of accrual under the normal application of CJ § 5–101, then Respondent's suit was not barred by limitations under CJ § 5–101. On the other hand, if we assume, *arguendo*, that the Endorsement employed language that would be effective contractually to alter the ordinary time of accrual, absent IA § 12–104, then the issue becomes whether IA § 12–104 is concerned only with the duration of contractual limitations or whether its terms also embrace the time at which the period of limitations begins to run. As we explain below, IA § 12–104 regulates the time of accrual of actions on certain policies as well as the duration of the limitations period.

### The Text

■ Travelers points to the language in IA § 12–104(a) that prohibits contractually setting "a shorter time to bring an action" and concludes that the prohibition applies only to the duration of the period of limitations. This is myopic. "[S]horter" is the comparative degree of the adjective. To determine its application, "shorter" must be related to something else. IA § 12–104(a) directs that the comparison be made to the time "required by the law of the State when the insurance contract . . . is issued[.]" The limitations law of the State applicable to the Policy is CJ § 5–101. That statute

embraces two elements, the three-year period, and the beginning point of that measurement, namely, the date that the civil action accrues. The Insurer's construction of IA § 12–104(a) leaves the three-year period required by CJ § 5–101 floating as a conceptualization of time, unattached to any point in time when the contractual measurement is required to commence. This construction would allow an insurer contractually to anchor the beginning of the limitations period at any point in real time, including anchoring the beginning of the contractual period at a point in time that has the practical effect of shortening, to less than three years from accrual of the cause of action, the time within which suit must be brought. That construction reads out of IA § 12–104(a) its requirement that the comparison for determining if a contract provision is "shorter" be made to the otherwise applicable limitations statute. Here, that statute, CJ § 5–101, measures by using two components, the length of the period and the time of accrual.

It is clear that, under the traditional meaning of "accrues," the insured's cause of action against Travelers did not accrue when the Plan discovered the loss caused by theft. This Court said in *Trimper v. Porter–Hayden*, 305 Md. 31, 501 A.2d 446 (1985), that

> "[t]he law is concerned with accrual in the sense of testing whether all of the elements of a cause of action have occurred so that it is complete. There must be both the *injuria* and the *damnum* of the common law. *See Oxtoby v. McGowan*, 294 Md. 83, 94, 447 A.2d 860, 866 (1982). But the injured party need not know that he has suffered a legally cognizable injury which has resulted in harm in order to have a complete cause of action. . . . The discovery rule does affect when limitations under § 5–101 will begin to run by adding an additional element, knowledge, to 'accrues,' but the discovery rule does not change the time when a cause of action becomes conceptually complete."

*Id.* at 42, 501 A.2d at 452 (footnote omitted).

■ Here, it is important to keep in mind that the Plan's discovery of the theft by a Montgomery Scrap employee would

have operated to extend, beyond traditional accrual, the three-year period of limitations for a suit by the Plan against that employee, but the issue before us is when the cause of action by the Plan against the Insurer accrued. For purposes of analyzing the operation of IA § 12–104, on the record before us, it is unnecessary to decide how the discovery rule might impact IA § 12–104, because, under the traditional law of accrual, Respondent's cause of action against the Insurer could not have been complete prior to the Plan's submission of its proof of loss.

*Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 582 A.2d 501 (1990), illustrates the traditional accrual of an action by an insured against its insurer. The case involved uninsured motorist coverage. The opinion does not even reflect the date of the automobile accident, when the cause of action against the tortfeasors would have accrued. Suit against the tortfeasors was filed December 14, 1982, and, three days thereafter, the insured gave notice to its insurer that that action had been taken. While the underlying suit was still pending, the insured, on April 14, 1986, sued the insurer, claiming under the uninsured motorist coverage. The insurer raised a statute of limitations defense, asserting that the cause of action had accrued when its insured learned that the tortfeasors were uninsured. Reversing a judgment entered on limitations grounds in favor of the insurer, this Court ruled:

> "[T]he decisions below cannot be squared either with general contract principles or with this Court's opinions. By holding that the statute of limitations began to run as soon as the [insured] learned that the tortfeasors were uninsured, the Court of Special Appeals in effect held that limitations in a contract action begin to run before there is a breach of contract."

*Id.* at 170, 582 A.2d at 503. Travelers notes that *Lane* involved statutorily required coverage, but *Lane* is not distinguishable from the instant matter on the point for which we cite *Lane*.

*Antigua Condominium Ass'n v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 517 A.2d 75 (1986), illustrates the need to identify, in a contract action, the promise that has been breached. That was an action by unit owners in a condominium against the developer who, at the various closings, had covenanted to repair certain defects of which it was given notice within one year following the respective closings. The Court of Special Appeals held that, for limitations purposes, the cause of action for breach of the repair covenant could not have occurred later than the time when a particular plaintiff discovered a defect. Because notice had been given by the plaintiffs no later than September 18, 1978, and suit had not been filed until September 24, 1981, the Court of Special Appeals affirmed dismissal of those claims. Rejecting that argument, this Court held:

> "We do not interpret the Repair Clause as simply a warranty of the condition of a unit or of the common elements as of the time of closing with a Unit Owner. Had [the developer] simply guaranteed the condition of the property as of the date of closing with a Unit Owner, any breach of that guarantee would necessarily occur at closing and, absent a special statute, the cause of action would accrue for limitations purposes when the breach was discovered. *See Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). Here, however, Melba additionally promised to repair if notified timely. The breach of that covenant to repair does not occur at closing or necessarily when notice is given. Conceptually, the ways in which one who has contracted to repair could breach that contract include repudiating the obligation before any notice is given, or, after being on notice of the defect, failing to undertake the repairs within a reasonable time, expressly refusing to repair, or, after undertaking to repair, abandoning the work before completion."

*Id.* at 715, 517 A.2d at 82–83. Here, the Policy is not a warranty that an employee will not steal. Subject to its lawful terms and conditions, the Policy is a promise to pay the loss if an employee steals. This suit seeks to enforce that promise.

■ We find nothing in IA § 12–104 indicating a legislative intent to permit, by the device of contractually accelerating the time of accrual, a shortening of the otherwise applicable time for filing suit by an insured against an insurer.

In its brief, Travelers runs down a checklist of aids to statutory construction, from which it concludes that its interpretation of IA § 12–104 is correct. That survey does not persuade us to alter our construction of the statute based on its text.

### Legislative History

Travelers infers that the predecessor to IA § 12–104, namely, Chapter 487 of the Acts of 1966, was intended to alter the result in *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 212 A.2d 311 (1965). That was a motor tort case in which the plaintiffs were injured in an accident in which one of the adverse vehicles was a taxicab insured by Amalgamated under a policy issued pursuant to the Motor Vehicle Financial Responsibility Act. The policy provided that a person who had secured a judgment against the insured could recover under the policy " 'in the same manner and to the same extent as the insured.' " *Id.* at 531, 212 A.2d at 313. The policy further provided that " 'no action shall lie against the company unless * * * suit is instituted within two years and one day after date of such judgment * * *.' " *Id.* Suit against the insurer was instituted beyond that period of time, but within three years of obtaining judgment against the insured. This Court concluded that it could not add to the financial responsibility statute a "requirement that the policy shall designate, as between the insurer and a plaintiff member of the public (as distinguished from the insured), a period of limitations equal to, or greater than, the general statutory period of limitations." *Id.* at 535, 212 A.2d at 315.

Travelers points out that the contractual accrual date of the limitations in *Amalgamated, i.e.,* judgment against the insured, was earlier than the breach by the insurer, presumably referring to a demand and nonpayment. *Amalgamated* illustrates that the parties may fix the accrual date, by contract,

absent statutory prohibition, but *Amalgamated* was decided before the predecessor to IA § 12–104 was enacted. *Amalgamated* does not inform us that the Legislature, when enacting IA § 12–104, intended to permit accelerating the traditional date of accrual while prohibiting only reducing the length of time before statutory limitations expire.

Chapter 487, codified as Maryland Code (1957, 1994 Repl. Vol.), Article 48A, § 377B, read:

"All provisions and stipulations contained in any contract of insurance or suretyship, whatsoever, heretofore or hereafter issued, fixing the time in which suits or actions may be instituted under or upon any such contracts at a period of time less than that provided at the time of the issuance or delivery of any such contract by the laws or statutes of Maryland in respect of limitations are hereby declared to be against State public policy, illegal and void, and no court in this State shall give any effect to any provisions or stipulation in any such contract mentioned in this section; nor shall any defense to liability under any such contract be based upon any such shorter limitation period."

Travelers takes comfort from the use of the phrase, "period of time," in Chapter 487, but we note that this earlier incarnation of IA § 12–104 prohibited "fixing the time in which suits or actions may be instituted ... at a period of time less than that provided ... by" statute. We have expressed our view on the importance of this comparison when examining the text of IA § 12–104, *supra.*

 Helpful to the analysis is the fact that, in 1966, when the earlier incarnation of IA § 12–104 was first enacted, this Court had applied a discovery rule only in a medical malpractice case, *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), and in a case involving negligent design and construction of a wall on another's land, *Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945). See *Trimper,* 305 Md. at 40, 501 A.2d at 451 (reviewing evolution of the discovery rule). When, in 1966, the General Assembly spoke of the statute of limitations with reference to insurance contracts, it necessarily contemplated

the statute of limitations that began running, with very limited exceptions, at the time of accrual, in the traditional sense. IA § 12–104 is a product of Code Revision and is "new language derived without substantive change from former Art. 48A, § 377B." Maryland Code (1997), Revisor's Note to IA § 12–104. Thus, for an insurance policy to comply with the required comparison to CJ § 5–101, its contractual limitations provision must recognize that the period of limitations may not begin to run earlier than the date of traditional accrual.

## *The Cases*

The statute that is currently IA § 12–104 has appeared in a few Maryland appellate decisions, but the issue presented here was not raised or decided in those cases. *General Ins. Co. of Am. v. Interstate Serv. Co.*, 118 Md.App. 126, 701 A.2d 1213 (1997), *cert. denied*, 349 Md. 103, 707 A.2d 89 (1998), involved a suit in Maryland by a subcontractor on the payment bonds issued on behalf of the general contractor on two construction projects, one in the District of Columbia and the other in Virginia. The bonds, in essence, provided that "[n]o suit or action shall be commenced" on the particular bond "after expiration of one year" from the last day of work under the contract. Both bonds further provided that, if that provision were invalid, the minimum "period of limitation" permitted by law would apply. *Id.* at 130, 701 A.2d at 1215. Work on the projects had been completed respectively in February and in July 1991, but suit was not filed on the bonds until November 1993. The trial court held that the contractual limitations provisions were invalid under former Article 48A, § 377B and entered summary judgment for the subcontractor. It would seem that the trial court did not consider that the contractual limitations provisions were saved by the contract language enlarging the length of the limitations period in the event that the preferred provisions were ruled invalid. The Court of Special Appeals reasoned that, "if Maryland law is controlling, the contractual limitations provisions are not valid[.]" *Id.* at 133, 701 A.2d at 1217. That Court, however, held that Maryland law was not controlling, and that the provisions

were valid under the controlling law of the District of Columbia and Virginia, respectively.

Travelers points out that *Hagerstown Elderly Assocs. Ltd. Partnership v. Hagerstown Elderly Bldg. Assocs. Ltd. Partnership*, 368 Md. 351, 793 A.2d 579 (2002), applied a contractual time of accrual that was earlier than the time of a surety's breach by nonpayment. There, the petitioner was an owner, the lead respondent was the general contractor, and another respondent was the surety on a performance bond. That instrument provided that "[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." *Hagerstown, supra,* No. 29, September Term, 2001, Record Extract at 56. The architect had certified that the work was substantially completed on December 21, 1983. On October 14, 1995, an exterior wall of the structure collapsed. The owner sued on October 16, 1996, only to be met by a limitations defense based on contractual limitations. The Circuit Court held that this provision in the bond was void under IA § 12–104, that the applicable limitations were twelve years under CJ § 5–102(a)(2), but that limitations had run.[3] This Court stated the issue as follows:

> "The Circuit Court was correct in substituting the twelve-year statute of limitations contained in § 5–102(a)(2) for the two-year limitation contained in the performance bond, and none of the parties dispute that finding in the case before us. The sole disagreement between the parties, with respect to the application of § 5–102(a)(2) to appellant's performance bond claim, is when the final payment was 'due' under the Construction Contract, because that was the

---

3. CJ § 5–102, in relevant part, provides:

"(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

. . . .

"(2) Bond except a public officer's bond[.]"

triggering event for the statute of limitations on the performance bond action."

*Id.* at 363, 793 A.2d at 586. Thus, the issue now before us was not raised in the *Hagerstown* case, after the Circuit Court had applied IA § 12–104 to invalidate the contractual limitations. *Hagerstown* simply decides the issue presented by the parties.

*Harvey v. Northern Ins. Co.,* 153 Md.App. 436, 837 A.2d 223 (2003), arose out of a fire loss to a boat. The policy's contractual limitations provision required suit within one year from the loss. Rejecting the insured's argument that IA § 12–104 voided this provision, the Court of Special Appeals held that, under IA § 12–101, the policy was of a type, wet marine, that was not covered by § 12–104. In its analysis the Court described § 12–104 as a statute that prohibited contractual limitations provisions that were "more restrictive" than would otherwise be the case under State law. *Id.* at 444, 837 A.2d at 228.

### Insurance Division Approval

██ In order for the Maryland Changes Endorsement to be utilized by the Insurer in this State, the form would have to have been approved by the Insurance Division.[4] From this, the Insurer concludes that there has been an administrative interpretation that the Endorsement fully complies with IA § 12–104 and that this Court should give weight to that interpretation when construing § 12–104.

The role of policy approval in statutory construction was described in *Board of Trustees of Md. Teachers & State Employees Supplemental Retirement Plans v. Life & Health Ins. Guar. Corp.,* 335 Md. 176, 642 A.2d 856 (1994), where we said:

"Policy approval, of course, is not conclusive of statutory conformity. It is clear that previously approved policies offered by admitted companies for delivery in Maryland

---

4. The record does not contain a description of this process. In particular, there is no indication that the early accrual date aspect of shortening limitations was considered.

may fail to comply with the Insurance Code or other applicable statutes. *See, e.g., Van Horn v. Atlantic Mutual Ins. Co.*, 334 Md. 669, 686, 641 A.2d 195, 203 (1994) ('Attempts by insurance companies, purporting to exercise contract rights, to avoid the public policy of compulsory motor vehicle insurance with mandated coverages, have repeatedly been rejected by this Court.'). Nevertheless, on the issue of whether a given policy complies with the Insurance Code, the determination of the Commissioner initially to approve the policy form, coupled with the absence of any exercise by the Commissioner of the § 376(b) power to withdraw approval, is entitled to weight in construing the statute that the policy form allegedly violates."

*Id.* at 191–92, 642 A.2d at 863.

In *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 416 A.2d 734 (1980), this Court invalidated an exclusion from PIP coverage that the administrator had approved. "The Insurance Commissioner's approval of the policy's exclusion is not persuasive because it is an administrative interpretation contrary to the clear and unambiguous meaning of the statute." *Id.* at 160, 416 A.2d at 738.

This brings us full circle back to our conclusion in the *Text* section of this opinion. The public policy of IA § 12–104 is that an insured's rights under the statute of limitations to file suit on the policy should not be reduced by contractual limitations. There is no ambiguity in the term, "shortened," in § 12–104 because that statute requires comparison to the otherwise applicable statute of limitations with its two elements, the date of accrual and the length of the time period.

For these reasons, we affirm.[5]

---

5. In view of this holding, it is unnecessary for us to consider the alternate ground of decision relied upon by the Court of Special Appeals, namely, that the Policy's prohibition against suit until after ninety days had elapsed from the filing of the proof of loss violated IA § 12–104. *Millstone*, 183 Md.App. at 516–17, 962 A.2d at 439.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY THE PETITIONER.